## ESTATE OF JOHN BLAKE, DECEASED.

APPEAL BY A. B. CHILCOTT, FROM THE ORPHANS' COURT OF MONTGOMERY COUNTY.

Argued February 7, 1890—Decided April 21, 1890.
[To be reported.]

1. When a will, after directing the sale of the testator's real estate, blends the realty and personalty into one fund for the payment of legacies, and the gift made to residuary legatees is described as consisting of what should be left after the payment of the particular legacies, the

Statement of Facts.

latter will be a charge upon the real estate, both because of such blending and because of the form of the residuary bequests.

2. If the executor of such will, after a sale of the real estate to himself, subsequently ratified by the parties in interest, settles his account, taking credit for a legacy charged on the land, the interest of which was bequeathed to one person for life and the principal to others at her death, and thereafter treats himself as a trustee of such legacy, it becomes a personal debt, which, in the event of his death will be a lien upon his property paramount to his will.

3. When a will directs that the testator's debts and legacies shall be paid by his sons out of the farms devised to them, an additional provision that each son shall pay in proportion to the amount of the valuation placed upon his farm in the will, fixes the rule for adjusting the relative liability of the sons as between themselves, but in no way affects the right of creditors to be paid in full, upon a distribution of the proceeds of sale of one of the farms.

4. Such a testamentary charge of debts and legacies cannot affect the right of priority over legacies which is given to debts by § 48, act of February 24, 1834, P. L. 82, nor does it attempt to change the legal rule settling their relation to each other; wherefore, upon distribution in pursuance of a sale under the act of April 18, 1853, P. L. 503, the debts so charged must be first paid in full.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 160 January Term 1890, Sup. Ct.; court below, No. 150 June Term 1889, O. C.

John Blake, Jr., trustee to sell the real estate of John Blake, Sr., deceased, having settled an account exhibiting a balance for distribution amounting to $10,834.30, the proceeds of a sale of real estate under the act of April 18, 1853, P. L. 503, the court below appointed *Mr. Franklin March* auditor to distribute said fund.

The auditor found the following facts: Abraham Blake, father of John Blake, Sr., deceased, died about 1864, seised of a tract of land containing 55 acres, and owning certain personal estate. By his will he directed that said tract of land be sold and that the proceeds of the same and of his personal estate, when added together, be divided as subsequently specified. Then, after several bequests, he provided as follows:

"Item. I direct and bequeath to my daughter, Mary Chilcott, the interest of thousand dollars to be paid to her annually, and at her decease the one thousand dollars that she receives

*Statement of Facts.*

the interest of, to be divided as follows : seven hundred dollars to be paid to her son John B. Chilcott and the balance to her daughter Mary Jane Chilcott.

"Item. The balance of my estate when the amount is ascertained to be divided as follows : "

The will then divided the residue into four parts, bequeathing them among the testator's children and grandchildren. In connection with two of these bequests, their subject matter was described as the one fourth part of the estate after payment of the other legacies " described above." The testator appointed his son, John Blake, Sr., now deceased, as his executor, and a codicil directed that the $1,000, bequeathed to Mary Chilcott, be divided at her death between her sons Abraham and John, and her daughter Mary, equally.

John Blake, Sr., the executor of the foregoing will sold the real estate virtually to himself, but this sale was afterwards confirmed by the parties in interest, the deed of confirmation being signed by all the legatees except the children of Mary Chilcott. After making this sale, he settled his account, on July 12, 1865, charging himself with $8,699.87 as " amount of real estate sold," and with personalty amounting to $4,181.22, making a total of $12,881.09 upon the debit side. He took credit, inter alia, for " amount of specific legacy of $1,000 bequeathed to Mary Chilcott, the income to be paid to her during life and the principal at her death to her three children equally." This account was duly confirmed.

John Blake, Sr., the son and executor of Abraham, died in 1872, leaving a will, which after bequeathing certain legacies and annuities, provided as follows :

"Item. I give and devise to my son Thomas M. Blake, his heirs and assigns, the farm on which I now reside near Bustleton, containing about seventy-three acres valued at one hundred and ninety-five dollars per acre.

"Item. I give and devise to my son John Blake, Jr., his heirs and assigns, the farm on which he now resides in Abington township, Montgomery county, containing about fifty-five acres valued at one hundred and sixty dollars per acre; my said sons Thomas M. Blake and John Blake are to pay all my debts and the aforesaid legacies and yearly annuities out of the said farms devised to them, and I want each son to pay in

proportion to the amount of the valuation which I have placed on each farm."

The 55 acre tract thus devised to John Blake, Jr., being the same land that John Blake, Sr., this testator, acquired from the estate of Abraham Blake, was sold by order of court in proceedings in the estate of John Blake, Sr., under the act of April 18, 1853, P. L. 503, and the fund now for distribution consisted of the proceeds of that sale. The 73-acre farm devised to Thomas was subject to two mortgages given by John Blake, Sr., in his lifetime, and, at some time subsequent to his death, that farm was sold at sheriff's sale under the earlier of the mortgages. Both of them were paid out of the proceeds of the sale, the aggregate of debt and interest so paid being $3,772.47.

Mary Chilcott died in 1886. The testimony before the auditor showed that interest on the Chilcott legacy had been paid in full to October 1, 1886.

Abraham B. Chilcott and others, children of Mary Chilcott, deceased, having made a claim for the payment of the Chilcott legacy, in full, out of the fund for distribution, the auditor reported, as his conclusions thereon, as follows:

That as the fund in hand arose from the sale of the real estate of John Blake, Sr., the provision in the will of Abraham Blake, directing the payment of this legacy before distribution among the residuary legatees named in that will, did not apply; that any lien of the legacy on the land, under that will, was discharged, the account of the executor showing that he had in his hands enough personalty to pay the legacy, and that it was appropriated for that purpose, and twenty-four years having elapsed since the confirmation of the account; that, as the land was free and discharged from any lien for this legacy, the residuary legatees of Abraham Blake had power to confirm the sale made by John Blake, Sr., to himself, as they did do; but that, even if that sale were void, this would not aid the claimants, in view of the discharge of the land from the lien of their legacy by reason of the appropriation of the personal estate to it; that, having no lien under the will of Abraham Blake, the legacy could come in on the fund only as a debt of John Blake, Sr., and its statutory lien as such having long since expired, and the only lien which it

### Statement of Facts.

now had being created by the will of John Blake, Sr., the directions of that will as to the proportion in which the testator's debts should be paid by his devisees out of their respective farms, must be observed in the distribution; and, as the valuation placed by said will upon the farm devised to John Blake, Jr., was $8,800, and the valuation of the farm devised to Thomas Blake was $14,235, the former was liable for $\frac{8,800}{23,035}$ of the debts and legacies charged by the will, and the latter for $\frac{14,235}{23,035}$ thereof, the debts of John Blake, Sr., and the legacies bequeathed by his will, standing upon an equal footing in this respect.

The auditor, accordingly, taking into consideration the fact that the land devised to Thomas had paid in full, upon the sheriff's sale thereof, mortgages amounting to $3,772.47, which were debts of John Blake, Sr., distributed to each of his remaining debts, including the Chilcott legacy, and each of the legacies bequeathed by his will, $\frac{8,800}{23,035}$ of the amount due thereon, and, in addition, distributed pro rata among the same debts and legacies the sum of $1,441.47, that being the proportionate part of the mortgages aforesaid, which, under the will, should have been paid, in the auditor's opinion, by the land devised to John Blake, Jr., and that amount being so awarded in this distribution upon the principle of "subrogating the estate of John Blake, the younger, in favor of the estate of John Blake, the elder," to that extent. The aggregate of the sums thus awarded upon the Chilcott legacy, which amounted, with its interest, to $1,102.33, was $511.92. The residue of the fund left after making this distribution, the auditor awarded to lien creditors of John Blake, Jr.

A. B. Chilcott et al. filed exceptions to the report of the auditor, alleging inter alia, that the auditor erred in not awarding payment of the whole of the Chilcott legacy out of the fund for distribution;[1] in not deciding that said legacy was a trust, and to be paid first out of the estate of Abraham Blake in the hands of John Blake, Sr.;[2] in awarding to John Blake, Jr., or to his creditors, any of the fund for distribution until the Chilcott legacy was first paid in full;[3] and in not allowing that legacy in full before any distribution among the legatees of John Blake, Sr.[4]

Opinion of Court below.

After argument, the court, WEAND, J., overruled the exceptions and confirmed the report, filing an opinion in part as follows :

When the facts of this case are properly stated and understood, the questions raised by the evidence are not difficult of solution.

Abraham Blake died about 1864, seised of real estate situate in Abington township, Montgomery county. By his will, he bequeathed a legacy, the interest of $1,000, to his daughter Mary Chilcott; at her decease the principal sum was to be divided between her son John B. and daughter Mary Jane Chilcott, the former receiving $700 and the latter the balance. The residuary part of his estate he divided into four parts. . . . The testator appointed his son John Blake, Sr., as the executor of his will. He sold the real estate to another, who then conveyed it back to him, but the sale was afterwards confirmed by the parties in interest.

John Blake, Sr., as executor, filed his account July 12, 1865 ; it was confirmed without exception. In the account, credit was claimed for the amount of a specific legacy of $1,000 bequeathed to Mary Chilcott, the income to be paid to her during life, etc. Mrs. Chilcott died about two years ago ; one of her sons, John, died over 20 years since, leaving neither widow nor children. Her daughter Mary, now Otterson, still lives. John Blake, Sr., as executor, never paid over this legacy, nor was it invested or earmarked. His estate is now before us for distribution, and the question raised is, whether this legacy shall be paid in full or pro rata with other creditors, the fund not being sufficient to pay all debts.

The legacy was not charged on the land, and the executor was authorized to sell the farm by the terms of the will. The personal fund and the real-estate fund were in their order, therefore, liable for the legacy, and the land was released. Whilst the sale of John Blake, Sr., was voidable, it was only so as to those whose interests were affected. The legatees could only claim their legacies through the executor, and their demands were met when a sum was raised sufficient to pay them. To that they were to look. After the account was filed, their remedy was against the executor. They took no action for over twenty years, and during John Blake's life-

Arguments.

time, and hence lost their claim, if they had any, against the land, and probably the statute would bar any claim against him personally. They cannot now claim in any way other than as creditors of John Blake, Sr.

John Blake, Sr., died in 1872, leaving a will whereby he charged his debts upon his land which he devised to his two sons, John Blake, the accountant, and Thomas M. Blake, and by virtue of his will the legatees of Abraham Blake became creditors of John Blake, Sr., but only creditors with others, and having no preference; and the auditor was clearly right in awarding them only a pro rata distribution. As they now can only claim by virtue of John Blake, Sr.'s, will, they must also take as therein provided, and hence the land devised to John Blake, Jr., and which is now before us for distribution, is only liable for the proportion set forth in the will. This disposes of all the exceptions filed by the Chilcott claimants. . . . . .

The auditor was correct in taking the value of the John Blake farm, at the price named in the will, as the true basis of calculation, instead of the selling price realized years after it had descended to John, Jr. John Blake, Jr's. land was converted into money, by the sale, and his lien creditors were properly allowed a share in the distribution.

We see no error in the report. All the exceptions are overruled and the report as amended is now, December 16th, confirmed.

—Thereupon A. B. Chilcott took this appeal, specifying that the court erred:

1–4. In not sustaining the exceptions to the auditor's report.[1 to 4]

*Mr. George W. Rogers* (with him *Mr. D. Ogden Rogers*), for the appellant:

1. A general devise blending real and personal estate together, constitutes particular legacies a charge upon the real estate: Tucker v. Hassenclever, 3 Y. 294; Witman v. Norton, 6 Binn. 395; McLanahan v. Wyant, 1 P. & W. 111; Tower's Appropriation, 9 W. & S. 103; Wertz's App., 69 Pa. 173. What stronger case of blending could there be than we find in the will of Abraham Blake? The special legacies, including that in favor of Mrs. Chilcott and her children, were charged

by the will upon the land.   The executor, after purchasing the
land at his own sale in the name of John Smith, held it subject
to the same trusts that it was subject to before : Herr's Est.,
1 Gr. 272; Lead. Cas. in Eq., 179; Devoe v. Taney, Zinn's
Lead. Cas. on Trusts, 1; Oliver v. Pratt, Idem 18.   He recog-
nized this trust by paying the interest to Mrs. Chilcott until
his death, and his devisee, John Blake, Jr., afterwards recog-
nized it in the same way.   The fund before the court is the
proceeds of a sale under the act of April 18, 1853, P. L. 503,
and under its provisions is to be held for the same uses that
the land was held for.

2. We have here, then, the Abraham Blake farm, still rep-
resenting the Abraham Blake estate.   John Blake, Sr., re-
ceived it charged with a trust which he could not divest, and
John Blake, Jr., being a volunteer, received it charged with
the same trust: Coble v. Nonemaker, 78 Pa. 501; Sadler's
App., 87 Pa. 154.   The auditor, however, found as a fact that
the Chilcott legacy was a debt of John Blake, Sr.   But debts
must be paid before legacies : 2 Williams on Executors, 1149 ;
§ 48, act of February 24, 1834, P. L. 82.   While a direction
in a will to pay legacies in a particular way, may be binding
upon legatees, it is not upon creditors : McNair's App., 4 R.
155.   The order of payment is, first, claims paramount to the
will, then, legacies general or specific, and after that residuary
legacies: Gallagher's Est., 76 Pa. 296.   If any claim is para-
mount to the will it is the debt of the testator, and therefore,
even under John Blake's will his debts should first be dis-
charged.   Debts and legacies cannot participate equally, for
the debts are paramount to the legacies and must first be paid.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the
appellees :

The argument for the appellant is based upon an untenable
premise, viz., that the court is distributing the estate of Abra-
ham Blake.   By the confirmed account of his executor the
Chilcott legacy passed into the executor's hands as a trustee
for the beneficiaries, and he became as such trustee personally
responsible to them.   The life-tenant might have received the
money on giving security, or either she or those in remainder
could have compelled the trustee to invest and earmark the

security. Hence the fact that the executor virtually sold the farm to himself becomes of no importance, as the Chilcott people had no interest in that matter. Any right which they have to collect this money at all, is under the will of John Blake, Sr., and governed by its provisions, as any statutory lien upon his estate has expired. The case is ruled by Oliver's App., 101 Pa. 299.

OPINION, MR. JUSTICE WILLIAMS:

Abraham Blake died in 1864. By his last will he directed that his real estate, which consisted of a farm of 55 acres, and his personal property, should be sold and converted into money by his executor. Out of the fund thus provided he directed the payment of certain specific legacies, and gave the remainder of his estate to four residuary legatees in equal shares. The specific legacies were a charge upon the testator's real estate for two reasons : first, because of the blending of the personal and real estate into one fund for the payment of legacies; second, because of the terms employed by the testator, which gave to the residuary legatees what should be left after the legacies were paid.

Among the legacies thus charged on the land was one of $1,000, the interest upon which was to be paid to Mary Chilcott during her life, and the principal of which after her decease was to be divided between her three children. The testator named his son John his executor, and made him one of the residuary legatees. In converting the estate into money, as directed by the testator, the executor sold the real estate to himself, conveying it to one John Smith, who on the same day conveyed it back to him and his heirs. He then settled his account as executor, which was confirmed in the fall of 1865. He took credit for the $1,000 given to the Chilcotts, and, treating himself as a trustee under the will, paid the interest to Mary Chilcott regularly until his death, in 1872. He made a will, by which he directed that his debts, and the legacies in his hands under the terms of his father's will, should be paid out of his estate. He also gave several annuities and legacies to members of his family. Subject to these charges, he devised the farm which came from his father to his son John Blake, Jr., and another farm to his son Thomas M. Blake. The first of

these farms was sold by virtue of an order of court made un-
der the provisions of the act of 1853, and its proceeds consti-
tute the fund now for distribution.

The learned auditor treated the fund as representing the title
of John Blake, and held that his debts and the legacies due
under his will stood on the same ground, and were entitled to
share in equal proportions in the proceeds of the sale. The
appellant contends that the debts must be first paid in full, and
then the legacies must share pro rata in what remains. In con-
sidering this question, it may be conceded that John Blake had,
by means of the sale to Smith and the transfer to himself, se-
cured a title to the farm which was capable of confirmation by
the heirs at law of his father, and which was so ratified and
confirmed by them. It is also clear that by the settlement of
his account as executor, and the retention of the principal of
the Chilcott legacy, he became a trustee for Mrs. Chilcott and
her children, and liable to them as such. He so understood it,
and so long as he lived he paid the interest annually to Mrs.
Chilcott. When he died, with this money in his hands, he was
debtor to the parties entitled to it, and the debt was a lien upon
his property, real and personal, without any testamentary di-
rection upon the subject, and entitled to be paid in preference
to the legacies provided for in his will. But he recognized his
liability, and expressly directed his executors to pay his debts,
and the annuities and legacies which he had given, " out of
the said farms devised " to his two sons, and added : " I want
each son to pay in proportion to the amount of the valuation
which I have placed on each farm." This direction fixed the
rule by which the relative liability of the sons could be ad-
justed between themselves, but neither diminished the rights
of creditors as such, nor increased those of the annuitants and
legatees.

The payment of debts, and the order in which they are en-
titled to take, are provided for by the act of 1834. After these
are all paid, and not until then, can the directions of the tes-
tator in regard to the distribution of his estate be heard; and
they take effect only upon what remains after the settlement
of his estate, and the payment of his debts. The estate of
John Blake was therefore to be applied in the first instance to
the payment of his debts, among which are the unpaid legacies

under his father's will, which he held as trustee for the beneficiaries at the time of his death. After these are paid, the residue is applicable to the annuities and legacies given by him. The law imposes the duty to pay the debts ; the testator, that to pay legacies. The executors must discharge the first if they have assets sufficient for that purpose. They must discharge the last after the first is fully performed. When John Blake charged the payment of his debts and legacies on the farms devised to his sons, he did not attempt to change the legal rule which settles their relation to each other, and he could not have done so if he had attempted it. The mode of distribution adopted by the court below disregarded the claim of the creditors to be first paid, and was to that extent erroneous. For that reason the

> Decree is now reversed, and the record remitted, to enable the Orphans' Court to make distribution in accordance with this opinion.