## ESTATE OF DAVID DUVALL, DECEASED.

APPEAL BY ABIGAIL L. GRAVES FROM THE ORPHANS' COURT
OF WASHINGTON COUNTY.

Argued October 19, 1891—Decided January 4, 1892.

1. The intention of a testator to create a charge on real estate, is to be carried out whenever it is discoverable from anything contained in his will; but there must be something on the face of the instrument itself from which the intention to create such charge can be inferred: Okeson's App., 59 Pa. 100.

2. Where a testator dies without leaving personal estate sufficient for the payment of legacies, they are adeemed wholly or pro tanto, unless there is something in the will more than the mere bequests, to denote an intention that they should be paid out of the real estate: Clery's App., 35 Pa. 54, distinguished.

3. An executor of a will, taking land under an unconditional devise in such will, is not liable either by virtue of his office as executor, or individually, for the payment of pecuniary legacies, when no assets have come into his hands applicable to the payment of such legacies.

4. It seems: An appeal and certiorari from the decree of the Orphans' Court dismissing the petition of a legatee for a decree for the payment of his legacy as a charge on the testator's land, will not be quashed because no security has been given in the Orphans' Court, under § 59, act of March 29, 1832, P. L. 213.

Before STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.
No. 63 October Term 1891, Sup. Ct.; court below, No. 8
May Term 1889, O. C.

To the number and term of the court below, Abigail L. Graves presented her petition setting forth, in substance:

That David Duvall died in 1865, testate, leaving to survive him Alexander B. Duvall, an only son; Sarah How, Eliza Hannen, Ruth Garrett and Nancy Robinson, four married daughters; Mary Duvall, an unmarried daughter; and four grandchildren, to wit, Mary A. Bumgarner, Emily Graves, John H. Graves and Abigail L. Graves, the petitioner, being the children of Abigail Graves, a deceased daughter; that the petitioner's mother died when petitioner was a child, and petitioner was brought up by her grandfather, the testator, and

was maintained as a member of his family until the time of his death; that at the time of his death the testator's personal property consisted of farm stock, farming implements, and household goods, all on the farm on which he lived, and which sold for the aggregate sum of $789.85; that his real estate, of the value of about $13,250, consisted of two tracts of land, one containing about twenty-three acres, and the other of two parcels containing about one hundred and eighty-two acres; that the will of the testator, dated May 15, 1860, duly admitted to probate on April 10, 1867, provided as follows, to wit:

"As to my worldly estate and all the property, real, personal, or mixed of which I shall die seised and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, to wit:

"First, my will is that all my just debts and funeral expenses shall by my executor hereinafter named be paid out of my estate, as soon after my decease as shall by him be found convenient.

"Item. I give, devise, bequeath to my beloved wife, Mary Duvall, if she should survive after my decease, the use and income of all my real, personal estate during her natural lifetime.

"Item. I give and bequeath to my daughter, Sarah How, six hundred dollars.

"Item. I give and bequeath to my granddaughter, Abigail Graves, eight hundred dollars, to be paid when she is twenty-one years of age.

"Item. I give and bequeath to my daughter, Eliza Hannen, eight hundred dollars.

"Item. I give and bequeath to my daughter, Ruth Garrett, eight hundred dollars.

"Item. I give and bequeath to my three grandchildren, namely, Mary Ann, John Henry, and Emily Graves, one dollar each.

"Item. I give and bequeath to my daughter, Nancy Robinson, and her heirs forever, a certain piece of land it being the southeastern part of that tract of land which my son Alexander now lives on, lying on the south branch of Pike Run creek. I bequeath her and her heirs all the bottom land lying on said run as far up as the coal-bank run. Also, I bequeath to her

and her heirs the sum of two hundred dollars in money to build a house on the same.

"Item. I give and bequeath to my son Alexander all the balance of the farm he now lives on, after the bequest to Nancy as aforesaid is struck off, and to remain on the farm as long as either of us may live.

"Item. I give and bequeath to my daughter, Mary Duvall, all that certain tract or parcel of land where I now live adjoining lands of Joshua Jackman, Wm. Gregg, and others, together with all the personal property that may be on the premises at the time of my decease, stock, household goods and every other article of property that may be on the premises to me belonging.

"And lastly, I do nominate and appoint my said son Alexander Duvall, to be the executor of this my last will and testament."

The petitioner averred, further, that letters testamentary upon the said will were issued to A. B. Duvall, who accepted the duties of the trust and had never been finally discharged therefrom ; that the said A. B. Duvall and the other devisees took possession of the real estate devised to them, and were still the owners thereof; that said A. B. Duvall had settled an account to No. 2 May Term 1867, A. A., whereby it appeared he had paid to Mary Duvall, Eliza Hannen, Ruth Garrett, Nancy Robinson and Sarah How, the legacies bequeathed to them, but he had neglected and refused to pay the petitioner, who had become of age on April 2, 1872, the legacy of eight hundred dollars bequeathed to her, or any part thereof; praying the court to cause due notice to be given to said A. B. Duvall, executor, and to A. B. Duvall, Nancy Robinson and Mary Duvall, devisees, and to other persons interested, if any, and thereupon proceed according to equity to make such decree or order touching the payment of said legacy, with interest, as might be requisite and just, etc.

An answer having been filed, the cause was set down for hearing on bill and answer. After argument, the court, Mc-Ilvaine, P. J., on December 30, 1890, filed an opinion in part as follows :

Letters testamentary were issued to Alexander B. Duvall,

his son, who settled his only and final account, which was
duly confirmed by this court on the —— day of May, 1867.
Mary Duvall, wife of the testator, died before he did. Abigail
Graves became twenty-one years of age on the second day of
April, 1872. From 1866, to the time when she arrived at her
majority, she had for her guardian Amor Jeffries, who settled
his guardianship account in this court to No. 11 August Term
1872, A. A.

The legacy bequeathed to Abigail Graves by her grandfather
has never been paid. She now seeks by this proceeding to en-
force its payment. The case, by agreement of the parties
comes before us on bill and answer.

The contention is, that the petitioner is entitled to a decree,
first, because the legacy "is charged upon and payable out of the
realty, and is recoverable under the act of February 24, 1834,
§ 59;" second, because "A. B. Duvall having elected to take
as devisee and to act as executor, and having taken charge of
the whole estate, is a trustee thereof for the legatees and is
answerable to the Orphans' Court under the act of February 24,
1834, § 47."

The first question for our determination is, did the testator
intend to charge the payment of this legacy upon his real es-
tate? A cardinal rule of construction is "that the real estate
is never to be charged with the payment of legacies, unless the
intention of the testator so to charge it, is either expressly de-
clared, or fairly and satisfactorily to be inferred from the lan-
guage of the will;" and "the intent of the testator is to be
gathered from the four corners of the will, taken as a whole."

There can be no possible claim in the case before us that the
testator in express terms charged the payment of his grand-
daughter's legacy upon the real estate. Her legacy is a general
pecuniary legacy. His real estate, which consisted of three
pieces, was unconditionally and specifically devised to the re-
spondents in this proceeding. Neither do we think, taking the
whole will together, that there is the slightest intimation, on
its face, that the testator intended this legacy to be paid out of
the real estate. But it is contended that facts outside the will
show that the testator intended to exempt the personal estate
and that by implication the real estate is charged. We have
been cited to a number of obiter dicta in support of this po-
sition.

Opinion of Court below.

It is true that a court can in the case of many wills more satisfactorily construe them, if it is "fully advised of the circumstances under which the will was made, as to the state of the testator's property, family and the like;" but, being advised of these facts does not empower the court to change the testator's will, or to make a new will for him, in order to relieve a legatee from the hardship of losing her legacy in case of an insufficiency of the personal estate. These circumstances can only be resorted to in aid of a proper interpretation, where on the face of the will it might be doubtful. After all, the intention must be discoverable in the will. In the case of Okeson's App., 59 Pa. 100, Justice SHARSWOOD says: "It is certainly true that no particular language is necessary to create such a charge. The intention of the testator is to be carried out wherever it is discoverable from anything contained in the instrument. But there must be something from which it can be inferred." In a case where the testator owned no personal estate, at the time he made his will, the Orphans' Court of Philadelphia, in holding that his real estate was not charged with the payment of general pecuniary legacies, said: "While the intention to charge lands with the payment of legacies need not be declared in express terms, it must be disclosed by the will itself, and cannot be inferred from the mere fact that at the time of its execution the testator owned no personal estate."

In the case at bar, it is claimed that the inventory filed in the estate of the testator shows that his entire personal estate, all of which was bequeathed to his daughter Mary, amounted to only $789.85, while the money legacies bequeathed in his will amount to $3,203. The petitioner alleges that all the personal property which the testator had when he made his will, was what was afterwards included in the inventory, and that therefore it follows that the testator when he made his will intended to exempt his personal estate from the payment of these general legacies. There is nothing on the face of the will to support this position.

The language: "all the personal property that may be on the premises (where I reside) at the time of my decease, stock, household goods and every article of property that may be on the premises to me belonging," does not indicate that the testator intended in this bequest to include all his personal estate.

On the contrary, it clearly indicates that when he made his will he had personal property elsewhere and of a different kind. He had another farm that, according to the answer, was let at a rental of two hundred dollars per year, and he may have had moneys owing him from those whom he then considered solvent debtors, and who afterwards became insolvent and whose indebtedness was not included in the inventory filed. The simple allegation of the petitioner, who was only eight or nine years of age when her grandfather made his will, unsupported by proof, is not sufficient to establish the fact that he had, outside of his real estate specifically devised, only an estate of $789.85, when his will was executed.

Again; if we look at the terms of the will wherein the real estate is devised, we find that the three specific devises are in substantially the same language; and if any part of the testator's real estate is charged with the payment of the general legacies, it is all charged. But, in the case of Nancy Robinson he coupled with the devise this language: "Also, I bequeath to her and her heirs the sum of two hundred dollars in money to build a house on the same." Why did he give her two hundred dollars in money to improve her real estate, if he intended it should be charged with its share of the general legacies before bequeathed? Why did he give Mary Duvall, his daughter, the specific legacy of all the personal property on the real estate specifically devised to her, if he intended it to be charged with the general legacies?

The fact that the testator, after giving certain sums of money to certain of his children, specifically and unconditionally devised his real estate to others of his children, and specifically bequeathed certain personal property to one of the devisees and gave another two hundred dollars to improve her real estate, leads to the inevitable conclusion that the testator when he made his will knew or thought that he had other personal property, moneys, or credits to meet the demands of his will outside the specific devises and legacies.

But it is claimed that, even if these general legacies were not a charge on the land, Alexander Duvall, the executor, should be adjudged to pay the petitioner's legacy. This position is untenable. In the first place, a proceeding against the executor as a delinquent trustee cannot be joined with a pro-

ceeding against the devisees to collect a legacy charged on real estate. But, independent of this, there is nothing in this will to indicate that the testator intended that the executor, Alexander Duvall, was to pay these general legacies if he accepted the real estate devised to him. His devise is not in the shape of a residue, nor is it blended with personal estate. Accepting what the will gave him, in no way bound him personally, or as executor, to pay the legacies bequeathed to other beneficiaries under the will.

The fact that Alexander Duvall, after being advised by his counsel that he was not liable for the payment of these general legacies, out of the goodness of his heart paid them all but the petitioner, does not make him liable in this proceeding. He must be allowed to regulate and place a limit upon his own generosity.

On the whole case, we are of opinion,

1. [That the petitioner's legacy is not a charge upon the testator's real estate devised to the respondents.] [1]

2. [That Alexander Duvall is not liable personally, or in virtue of his office as executor, for the payment of the petitioner's legacy, no assets from the personal estate having come into his hands which could be applied to that purpose.] [2]

3. [And that this court has jurisdiction in this proceeding only in the event that the petitioner's legacy is a charge on the land.] [3]

And now, December 30, 1890, this cause came on to be heard upon the amended petition and answer thereto, and after hearing the parties, upon due consideration it is ordered, adjudged and decreed that the prayer of the petitioner be refused and the petition dismissed at the cost of the petitioner; exception.[4]

—Thereupon, the petitioner took this appeal, specifying that the court erred:

1-3. In the conclusions of law embraced [  ] [1 to 3]

4. In entering the final decree.[4]

At the call of the case for argument, in the Supreme Court, counsel for the appellees filed a motion to quash the appeal and certiorari taken, "for the reason that no security was given by the appellant before taking the appeal, as required

Opinion of the Court.

by the act of assembly:" citing § 59, act of March 29, 1832, P. L. 213 ; Commonwealth v. Judges, 102 Pa. 228.*

On October 29, 1891, an order was filed, per Curiam, refusing said motion.

*Mr. M. H. Stevenson*, for the appellant.

Counsel cited: Commonwealth v. Shelby, 13 S. & R. 353 ; §§ 47, 59, act of February 24, 1834, P. L. 84 ; Riley's App., 34 Pa. 292 ; Eavenson's App, 84 Pa. 177 ; Balliet's App., 14 Pa. 461; Walker's Est., 3 R. 240 ; Clery's App., 35 Pa. 58 ; McFait's App., 8 Pa. 290 ; Ruston v. Ruston, 2 Dall. 244 ; Rewalt v. Ulrich, 23 Pa. 388 ; Steffy's App., 76 Pa. 94 ; Linnard's Est., 8 W. N. 80 ; Penna. University's App., 97 Pa. 200 ; Weber's App., 17 Pa. 479 ; Stump v. Findlay, 2 R. 173 ; Hoover v. Hoover, 5 Pa. 355 ; Thompson v. Thompson, 7 Pa. 79 ; Coxe's App., 120 Pa. 109 ; Soles v. Hickman, 29 Pa. 345.

*Mr. R. W. Irwin* (with him *Mr. M. C. Acheson*), for the appellees :

Distinguishing Clery's App., 35 Pa. 54, counsel cited : Barklay's Est., 10 Pa. 390 ; note to Aldrich v. Cooper, 2 W. & T. Lead. Cas. in Eq., 346 ; Haddock's Est., 18 W. N. 243 ; Van Vliet's App., 102 Pa. 574 ; Penny's App., 109 Pa. 324 ; Cable's App., 91 Pa. 327.

OPINION, MR. JUSTICE STERRETT :

In this proceeding appellant seeks to enforce payment of the legacy of eight hundred dollars, bequeathed to her in 1865 by her grandfather, David Duvall, " to be paid when she is twenty-one years of age." Her claim is based on the following grounds :

1. That the legacy is a charge on testator's real estate devised to the appellees.

2. That her uncle Alexander Duvall, one of the appellees, is liable either personally, or by virtue of his office as executor of his father's will.

---

* The opinion in the case cited concluded : " We will direct the prothonotary to hereafter issue no certiorari to bring up the record on an appeal from the Orphans' Court, without being furnished with satisfactory evidence that security has been duly given in that court." See in this connection, Commonwealth v. Wistar, 142 Pa. 373.

Opinion of the Court.

In an opinion, reciting all the facts and fully considering the questions presented, the Orphans' Court held that appellant's legacy is not and never was a lien on the land ; that Alexander Duvall neither expressly nor impliedly assumed payment of the lagacy ; nor is he liable therefor by virtue of his office as executor, because no assets applicable to the payment thereof ever came into his hands ; and hence this proceeding cannot be sustained. An examination of the record has satisfied us that the court was right in these conclusions.

As a general rule, " the personal estate is not only the primary, but prima facie the exclusive fund for the payment of legacies, and this conclusion cannot be repelled by showing that the testator had no personal estate when the will was executed, and must therefore have intended that the legacies should come out of the real estate. · Where one dies without leaving sufficient personal estate for the payment of his bequests, they are adeemed wholly or pro tanto, unless there is something more than the mere gift of the bequest to denote an intention that it should be paid out of the land : " Aldrich v. Cooper, 2 W. & T. Lead. Cas. in Eq. 346. " While the intention to charge lands with the payment of legacies need not be declared in express terms, it must be disclosed by the will itself, and cannot be inferred from the mere fact that, at the time of its execution, the testator owned no personal estate ; non constat that he may not do so at a subsequent date : " Haddock's Est., 18 W. N. 243. The intention of the testator to create a charge on real estate is to be carried out whenever it is discoverable from anything contained in his will, but there must be something on the face of the instrument from which it can be inferred : Okeson's App., 59 Pa. 100.

· There is not the slightest intimation, in any part of the will before us, that the testator intended the legacy in question to be paid out of his real estate. On the contrary, the indications are all the other way. The bequest to appellant is a general pecuniary legacy, " to be paid when she is twenty-one years of age." Testator's real estate, consisting of three pieces, is unconditionally and specifically devised to his son Alexander and two of his daughters, respectively. This case is clearly distinguishable from Clery's App., 35 Pa. 54. In that case the intention to charge the realty was shown, not only in the

strongly implied exoneration of the personalty, but in the fact that the legacies became payable only on the termination of the life-estate of the testator's widow, to whom the personal property was bequeathed absolutely; and in the further fact that the testator specifically directed the "overseers" of his will to "see that all the above legacies are paid."

The proposition that a devisee of land who acts as executor of the will, must either refuse to accept the unconditional devise, or render himself liable to pay pecuniary legacies, is wholly untenable. It does not appear that Alexander Duvall, either as executor of his father's will or in his individual capacity, did or omitted to do anything that should render him liable to payment of the legacy in question. The questions presented in this case are so fully considered and satisfactorily disposed of in the opinion of the Orphans' Court that further comment is unnecessary.

Decree affirmed, and appeal dismissed with costs to be paid by appellant.