Fetter Estate.

Argued October 5, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Joseph A. Allen,* for appellants.

*Joseph P. Gaffney,* for appellee.

OPINION BY RHODES, J., March 2, 1943:

The question for decision is whether a legacy to the City of Philadelphia under the last will and testament of George W. Fetter, who died in 1909, is charged upon the real estate of the testator.

The personal estate was insufficient to pay the legacy. The balance of the personal estate and the proceeds of the real estate sold were awarded to the City, Acting by the Board of Directors of City Trusts. Exceptions to the adjudication by the nephews and nieces of the

testator were dismissed by the court in banc; a schedule of distribution was filed in accordance with the adjudication and approved. Exceptants have appealed.

The will, after providing for conduct of testator's funeral, payment of his debts, disposition of his household furniture, and the use for life of his homestead by his widow, reads as follows:

"FIFTH:—I direct, that all my real estate and personal property shall remain invested, as at my decease, excepting such money as may be needed, to carry out the conditions of my will, and for these purposes, such money shall be obtained by the sale of stocks or bonds, belonging to the estate. I direct that the net produce of my personal estate, be divided as follows:—

"First:—I give and bequeath unto the Medico Chirurgical Hospital, of the City of Philadelphia, the sum of five thousand dollars, for the endowment of a free bed, in the room named after my deceased wife, Mary A. Fetter.

"Second:—I give and bequeath unto my faithful servant, Catharine Cooke, the sum of one thousand dollars, in cash, to be paid to her, by my executrix, in settlement of my estate.

"Third:—I give and bequeath unto my beloved wife, Salome, the entire income, of the balance of my real and personal estate, during her natural life, and at her death,

"First:—I give and bequeath unto the City of Philadelphia, the sum of fifty thousand dollars, in trust, to invest the same, and to collect the income thereof, and expend it in the purchase of scholarships, in the higher institutions of learning, for such poor young women, of the City of Philadelphia, as may in the judgment of the Board of City Trusts, be most worthy of the benefit.

"Second: All the residue, and the remainder of my entire estate, real, personal or mixed, I give devise and bequeath unto my nieces, Charlotte T. Brinsley, Sarah C. Gainor, Josephine A. Gunser, Elizabeth C. Phlon,

Melissa Barcalow, and my nephew, Samuel W. Dyer, share and share alike. If any of my said nieces or nephews shall not survive, then I direct the share of such niece or nephew, shall go to her or his children, and if such niece or nephew shall have no children, those surviving or living at this time, shall receive the share of such niece or nephew divided among them, share and share alike."

After the death of testator's widow, in 1941, her account as trustee, stated by her executor, showed a balance of $35,409.18. Some of this fund represented the proceeds of sale of two parcels of real estate, 4202-4204 Girard Avenue, Philadelphia, owned by the testator at the time of his death, and sold under the Revised Price Act of 1917, P. L. 388, as amended, 20 PS §1561 et seq. The City of Philadelphia claimed the entire balance on account of its legacy; testator's nephews and nieces claimed the portion of the fund derived from the sale of the real estate on the ground that the legacy to the city, by the language of the fifth paragraph of the will, was intended by the testator to be paid only from his personal estate.

The court below took the view that in the paragraph of the will just preceding the legacy to the city there occurred a blending of the real and personal estate into a general devise for the purpose of paying the income therefrom to the testator's widow for life. This construction of the will was held to satisfy the requirement of the law previous to the enactment of section 17 of the Wills Act of 1917, 20 PS §241, that only by express words or necessary implication could a legacy be made a charge upon real estate not specifically devised.

Appellants contend that the legacy to the city is subject to the direction of the fifth paragraph that "to carry out the conditions of my will ...... money shall be obtained by the sale of stocks or bonds," and that "the net produce of my personal estate, be divided as follows:" It is argued in support of this contention

that the testator's intention as to the source of payment of the legacy to the city is to be determined entirely by reference to the fifth paragraph, and not at all from the immediately preceding sub-paragraph, which combines realty and personalty in a single trust fund to give the widow an income for life, and which appellants consider a mere interpolation in a series of three pecuniary bequests.

We are of the opinion that the court below has reached the correct result, and that the portion of the fund derived from sale of the two parcels of real estate was properly applied to the payment of the legacy to the city.

It has frequently been said that "no will has a brother" (*Bumm's Estate*, 306 Pa. 269, 272, 159 A. 15), and that precedents are of little value in the construction of wills (*Jackson's Estate*, 337 Pa. 561, 570, 12 A. 2d 338).

The present will appears, upon careful reading, to exhibit a clear and simple plan, although it may not be embodied in orthodox form. It manifests an intelligible testamentary intent. From the beginning of the fifth paragraph to the end of the will, the testator apparently contemplated the bulk of his estate, real and personal, as a whole, with certain specific exceptions at specific future times, and, subject to these exceptions, directed various dispositions of the corpus of the estate at those times. He first directs that it remain as invested at his death, except for the funds required to pay debts and expenses and the two pecuniary legacies which were immediately payable. For these purposes his personalty could be sold. The income of the entire balance is then given to his widow for life. Upon her death the legacy to the city becomes payable; thereafter what remains passes to his residuary legatees and devisees.

We think a testator may visualize the remainder of his estate at more than one future time, and make one

or several interim dispositions of it previous to a final gift. A testamentary scheme which includes postponed gifts out of either income or principal of a gross estate might be difficult of expression without use of the concept of the residue of the estate as varying in amount and composition at various points of time in the plan. For example, in *Carson's Estate*, 130 Pa. Superior Ct. 133, 196 A. 527, the testator left his residuary estate in trust to pay a life income in a fixed amount to his widow, and the income of fixed sums to certain of his next of kin or their issue. The widow was given the power of appointment over $500,000 of the principal of the trust estate. At her death the remaining estate was to be held in trust for a charitable use, although the annuties provided for the next of kin were to continue. Death of several of the next of kin without issue, a contingency not specifically entertained in the elaborate scheme of the will, precipitated the contention that as to the sums from which their life incomes were derived an intestacy occurred. We rejected this contention, and pointed out that both clauses disposing of the residue of the estate at different times were residuary clauses, and that the testator had in mind both the primary residue and the secondary or final residue.

The use, in the present will, by the testator of the terms "balance of my real and personal estate" in the third sub-paragraph of paragraph five, and "the residue, and the remainder" in the final disposition in favor of his nephews and nieces suggests the recognition by him of some such distinction. He may or may not have made a conscious distinction; nevertheless it cannot reasonably be said that the third sub-paragraph fails to be residuary because not finally dispositive of principal. Such a clause seems within the limits of the definitions of the term given in *Bricker's Estate*, 335 Pa. 300, 303, 6 A. 2d 905, and *Haak's Estate*, 342 Pa. 93, 96, 18 A. 2d 671. The clauses in the will of the testator in *Carson's Estate*, supra, which this court described as pass-

ing the primary residue, were not finally dispositive of corpus, but created only a trust for the lifetimes of various beneficiaries.

It is true that in *Strahley's Estate*, 314 Pa. 515, 171 A. 892, a controversy governed by the provisions of section 17 of the Wills Act of 1917, 20 PS §241, where a pecuniary legatee sought satisfaction of a legacy out of real estate on the ground it was not specifically devised, but blended in a residue given in trust, similar to the clause creating the trust in the present will, the opinion of the Supreme Court did contain the language (314 Pa. 515, at page 517, 171 A. 892, at page 893): "In order to reach the conclusion that all of the testator's realty was blended into a residue given in trust, as petitioner contends, it would be necessary for us to ignore every paragraph in the will after the sixth, particularly the twelfth, which is a true residuary clause. Such a distorted construction of a clear and unambiguous testament is not to be considered. Since the testator specifically devised all of his real estate and nowhere indicated that he wished any of it to be subject to a charge in favor of the legacy, there is no property now available for the payment of the bequest to petitioner's ward, and the decree appealed from must be affirmed." The question there, however, was whether anywhere within the confines of the will the real estate had been specifically devised, and not whether, in any sense, the trust clause was residuary. The same result would have followed regardless of the terminology applied to the trust clause.

In any event, and whether the third sub-paragraph of this will may or may not properly be termed residuary, the legacy to the city is payable out of testator's real estate because of his apparent combining throughout his will of realty and personalty in a single corpus.

Section 17 of the Wills Act of 1917, 20 PS §241, reads: "All pecuniary legacies contained in any will

shall be charged upon, and payable out of, any real estate not specifically devised, where the personal estate is insufficient for their payment ....., unless a contrary intention shall appear by the will."

Before that time the rule was commonly stated, as in *Gallagher's Appeal*, 48 Pa. 121, at page 122, thus: "...... where a testator, after giving legacies, makes no specific devise of his real estate, but blending it with the personalty in the residuary clause, gives it all to his residuary devisee ...... he thereby charges the realty with the payment of the legacies."

But it does not follow that only by a residuary clause could an intention to make a legacy a charge upon real estate be implied. In the absence of specific devises, such an intention is most commonly disclosed in the residuary clause which is present in most wills. The rule as above stated is a guide to the testator's intention, but it does not exclude the discovery of his intention elsewhere in the will. Otherwise, it would violate the cardinal canon of construction of wills. The fundamental inquiry is whether, in the language of *Bennett's Estate*, 148 Pa. 139, 23 A. 1108, the will shows a blending of real and personal estate into one fund for the payment of debts and legacies. It may do so in a residuary clause, or it may do so elsewhere. In our opinion the will before us does show such blending regardless of the designation applied to the third sub-paragraph of the fifth paragraph.

We believe this view of the law before 1917 is supported by the authorities. In *Bennett's Estate*, supra, 148 Pa. 139, at page 141, 23 A. 1108, the Supreme Court, in an opinion by Mr. Chief Justice PAXSON, said: "The rule upon this subject is correctly stated in our recent case of *Duvall's Est.*, 146 Pa. 176 [23 A. 231], where it was held that if one dies without leaving sufficient personal estate for the payment of his bequests, they are adeemed wholly, or pro tanto, unless there is some-

thing more than the mere gift of the bequest to denote an intention that it shall be paid out of the land."

In *Duvall's Estate,* 146 Pa. 176, at page 184, 23 A. 231, at page 233, the principle is very plainly stated: "The intention of the testator to create a charge on real estate is to be carried out whenever it is discoverable from anything contained in his will, but there must be something on the face of the instrument from which it can be inferred: *Okeson's Appeal,* 59 Pa. 100."

*Gallagher's Appeal,* supra, 48 Pa. 121, at page 122, says the authorities, "if not actually hostile, do not agree very well together," and arrives at "one principle of decision fairly deducible from the authorities . . . . . ." —that a blending in the residuary clause is determinative in the absence of a specific devise. But *Blake's Estate,* 134 Pa. 240, 19 A. 850, held the legacies charged upon real estate, in an opinion which contains the following, at page 248: "Abraham Blake died in 1864. By his last will he directed that his real estate, which consisted of a farm of 55 acres, and his personal property, should be sold and converted into money by his executor. Out of the fund thus provided he directed the payment of certain specific legacies, and gave the remainder of his estate to four residuary legatees in equal shares. The specific legacies were a charge upon the testator's real estate for two reasons: first, because of the blending of the personal and real estate into one fund for the payment of legacies; second, because of the terms employed by the testator, which gave to the residuary legatees what should be left after the legacies were paid."

Appellants assert that, except for the alleged "interlarding" of the gift of income for life to testator's widow among the three pecuniary legacies, they would have been contiguous. Even if this had not been done, the legacies would have been contiguous only in the text of the will itself. Since the gift to the city was

postponed until the widow's death, the legacies could never be contemporary in payment or contiguous in the actual and visible structure of the will.

The decree of the court below is affirmed, at the cost of appellants.