## Webb et al. *versus* Hitchins.

1. The intent of a testator, as gathered from the whole will, furnishes the cardinal rule of construction; and when it is not inconsistent with established rules of law, and is manifested with sufficient certainty, it must govern.

2. When a parent or ancestor in disposing of property, and in designating beneficiaries, speaks of "the children," it is more reasonable to suppose that those in being, or those likely to be born of an existing marriage, were intended, rather than those who, at some remote and indefinite time in the future, might possibly be born of a marriage neither existing nor contemplated.

3. A testatrix in her will provided as follows: "I give, devise and bequeath unto my daughter A. . . . . . my messuage and lot of ground situate . . . . . for and during all the term of her natural life, . . . . . and from and immediately after the decease of my said daughter I give, devise and bequeath the same unto her daughter B. in fee simple, and in case of B.'s death then to be divided amongst the children." A. was *enceinte* at the date of the will, and the testatrix knew it. B. was not married until more than seven years after testatrix's death, and then died before A.

*Held*, that the words "the children" must be taken to refer to A.'s children and not to B.'s, and therefore that the former were entitled to the real estate.

January 16th, 1884.  Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  GORDON, J., absent.

[Webb *v.* Hitchins.]

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia County:* Of January Term, 1883, No. 378.

Ejectment, by Emma Hitchins, a minor, by her father and next friend, Robert J. Hitchins, against Albert Webb, and James Penn McCain, guardian ad litem of Eugene Webb and William Webb, minor children of said Albert Webb and Anna Webb, late Anna Warner, for a lot of ground on Mary street, in the city of Philadelphia.

Subsequently, upon the suggestion of the death of Emma Hitchins, Robert J. Hitchins was substituted as plaintiff.

The parties submitted to the Court the following case stated:

"Both parties claim under the will of Sarah Warner, who died seised, inter alia, of the premises in dispute. The will was proved January 28, 1867, and contained the following clause:

"Item.—I give, devise and bequeath unto my daughter, Anna Webb, late Anna Warner, my messuage and lot of ground situate on the north side of Mary street above Front street, for and during all the term of her natural life, she paying the taxes and water rent and keeping the same in good condition and repair, and from and immediately after the decease of my said daughter, I give, devise and bequeath the same unto her daughter, Sarah B. Loag, in fee simple, and, in case of Sarah B. Loag's death, then to be divided amongst the children."

Testatrix left surviving her one son, William Warner, and three daughters, viz., Elizabeth Drinkhouse, wife of William Drinkhouse; Emma Martin, wife of Joseph B. Martin; and Anna Webb, wife of Albert Webb. Anna Webb had a daughter by a former marriage, viz., the Sarah B. Loag mentioned in the will. At the date of the will she had no children by Albert Webb, but was *enceinte*, which was known to testatrix, and between the date of the will and the death of testatrix a child by this marriage, viz., Eugene Webb, was born, and after testatrix's death another child, viz., William Webb, was born. After testatrix's death Sarah B. Loag married Robert J. Hitchins, and afterwards, on December 10, 1873, during the lifetime of Mrs. Anna Webb, the life tenant, died, leaving her surviving husband and one child, Emma E. Hitchins. On March 6, 1874, Anna Webb died, leaving surviving her husband, Albert Webb, who is still living, and two children by him, viz., Eugene Webb and William Webb, already mentioned, both of whom are still living. Albert Webb and the two children above named, viz., Eugene Webb and William Webb, took possession of the land in dispute upon the death of Anna Webb, and have continued to occupy

[Webb *v.* Hitchins.]

it ever since.  On August 29, 1881, Emma E. Hitchins died in her minority, intestate, unmarried and without issue, leaving her surviving her father, Robert J. Hitchins, who is still living.  All of the children of Sarah Warner, except Anna Webb, are still living.

Upon this case stated, judgment was entered by the Court for the plaintiff.  Whereupon the defendants took this appeal, assigning for error said action of the Court in entering judgment for the plaintiff.

*J. Alexander Simpson* for the plaintiffs in error.—Sarah Warner, the testatrix, lived with her daughter Anna at the time of making the will, and until her decease, and, as the case stated admits, at the date of the will Anna had no children by her then husband, Webb, but was *enceinte*, and this fact was known to testatrix.  She also knew that Anna was very likely to have more children.  She already had had one by her former husband, was about to have another by her then present husband, and in all probability would be likely to have others, as she was still of full child-bearing age. Hence, when she undertook to provide for the contingency of the decease of Sarah B. Loag during the life estate of her daughter Anna, she naturally gave it to " the children," and no doubt she had then in her thoughts the child yet unborn, of which she knew, and those that presumably might follow after, rather than children to be born of one who was at that time but a mere child herself, and who would not be of marriageable age for years to come.  Besides this, before the death of the testatrix one of these children was born, and if the testatrix had not thought that in one contingency, at least, he would have a share of her estate, she could have altered her will to so provide.

*Frank P. Prichard* (with whom was *William M. Smith*) for defendant in error.—It is submitted that when an estate is given to one, and upon her death to be divided among " the children," the most natural and reasonable presumption is that testatrix means the children of the person to whom she has given the last estate, and whom she has last mentioned. In the present case this presumption is supported by all the surrounding circumstances and the context of the will.   The testatrix gives the property to Sarah B. Loag " in fee simple." There is a clear intent to benefit Sarah B. Loag to the exclusion of any other children of Anna Webb.   And in a later clause of her will she makes Sarah B. Loag the legatee of one-half of her residuary estate.   It is clear she did not intend to give Sarah B. Loag a life estate, and it is, we submit, equally

clear that she did not intend to exclude Sarah B. Loag's issue. What she did intend was evidently this: she had given Sarah B. Loag a fee simple, but Sarah B. Loag might die before the will took effect. In that event she wished to accomplish what the Act of April 8, 1833 (probably not known to her), would have accomplished for her, viz., to prevent a lapse by Sarah B. Loag's death, and in the event of such death to give the estate to Sarah B. Loag's children. In fact, the word "the" was probably carelessly written for the word "her," and the testatrix intended to say "In case of Sarah B. Loag's death, then to be divided amongst her children." In any event, there is every reason to believe that by "the children" she intended to give it to the children of the person to whom she had previously given the fee simple, and whose death in her lifetime was the contingency against which she was providing. This was the view taken by the court below, and it is submitted that this is the only view which has any reasonable foundation.

Chief Justice MERCUR delivered the opinion of the Court, March 17th, 1884.

This contention arises under a clause in the will of Sarah Warner. It is in these words: "I give, devise and bequeath unto my daughter, Anna Webb, late Anna Warner, my messuage and lot of ground situate on the North side of Mary Street above Front Street, for and during all the term of her natural life, she paying the taxes and water rent, and keeping the same in good condition and repair, and from and immediately after the decease of my said daughter, I give, devise and bequeath the same unto her daughter, Sarah B. Loag in fee simple, and in case of Sarah B. Loag's death, then to be divided amongst the children." The question is what children did the testatrix mean when she said "the children."

The case stated, *inter alia,* shows that the testatrix left surviving her, one son and three daughters. The son and two of the daughters are still living. The daughter Anna was the wife of Albert Webb. Sarah B. Loag was the daughter of Anna by a former marriage. At the date of the will she had no children by Mr. Webb, but was then *enceinte,* which fact was known to the testatrix. After the date of the will and before the death of the testatrix a child of this marriage was born and after her death another child was born. These two children are the plaintiffs in error.

After the death of the testatrix, Sarah B. Loag married Hitchins; but afterwards died during the life time of Anna Webb, the life tenant, and left a husband and one child surviving. This child is the defendant in error.

The inquiry now is, what was the intent of the testatrix? That intent gathered from the whole will furnishes the cardinal rule of construction. When it is not inconsistent with established rules of law and manifested with sufficient certainty it must govern. Middleswarth's Admr. v. Blackmore, 24 P. F. Smith, 414; Schott's Estate, 28 Id., 40; Reck's Appeal, Id., 432. Facts existing and known to the testatrix at the time she executed the will, furnish strong aid in arriving at her intention.

The will bears date the 23d of April 1866. Sarah Loag did not marry until December 1873, being more than seven and a half years after its date. Probably she was a mere child at the time of its execution; but however this may be, there is nothing in the will indicating that the testatrix had in her mind the contingency of a subsequent marriage of Sarah and of her death leaving children surviving. While both these contingencies may have been considered possible yet in the absence of any reference thereto in the will, we cannot assume they were provided for by the testatrix, when a more reasonable intent can be fairly deduced from the language used.

The testatrix executed her will with full knowledge that Anna Webb was married and pregnant; that she was therefore of child-bearing age, and might give birth to other children. The unborn child was in esse, and others might follow. This one was capable of inheriting, and of being a devisee, when the will was executed. It was actually born before the death of the testatrix.

When a parent or ancestor in disposing of property, and in designating the objects of her bounty, speaks of "the children," we think it more reasonable to assume that she intended those in being, or those likely to be born of an existing marriage, rather than those who, at some remote and indefinite time in the future, might possibly be born of a marriage neither existing nor contemplated. As then a fair and reasonable intent can be given to the language of the will by applying it to the children nearer to the testatrix, we cannot so construe it as to disinherit them and carry the property to those more remote, and who, we think, did not enter into the thought of the testatrix.

Other language in the clause cited still further indicates that the testatrix did not intend to give the property to children of Sarah thereafter to be born, in case of her death during the life of her mother. Thus it does not purport to make an immediate devise to Sarah, to vest an estate in her on the death of the testatrix, reserving a life estate to Anna Webb; but it is a devise to the latter during the term of her natural life, and it is not until "from and immediately after" her death, that the testatrix declares, "I give, devise and bequeath the

[Duffey *v.* Houtz.]

same unto her daughter Sarah." While the relative order of the two devises may not change the legal ·effect of the estate intended to be given to Sarah in case she survived her mother, yet we think it indicates a purpose in case of Sarah's death before she has any right of possession, not to give the estate to any of *her* children. Nor does the fact that the testatrix in a subsequent clause of her will provides that the remaining portion of her household furniture be divided equally among "my children" change the reasonable purport of the previous clause. She gave to each of her other children certain property absolutely. It was therefore very reasonable that she should give to the children of Anna Webb who should survive their mother, the estate of which the latter had the use during her life. This, we think, is the more reasonable intent of the testatrix, as manifested by the whole will. It follows that the learned Judge erred in entering judgment in favor of the defendant in error.

Judgment reversed, and now judgment in favor of the plaintiff in error on the case stated.