Carson's Estate.

Argued December 14, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Matthew Kramer,* with him *Wallace M. Keely* and *Charles B. Ermentrout,* for appellants.

*John C. Bell, Jr.,* with him *Theodore Lane Bean* and *Larzelere & Wright,* for appellees.

OPINION BY PARKER, J., January 27, 1938:

By these appeals we are required to construe certain provisions of the will of Robert N. Carson that were not affected by a former decision of the Supreme Court (227 Pa. 543, 76 A. 419). As all three appeals involve identical questions they will be disposed of in one opinion.

The testator, after providing for the payment to each of his nephews and nieces of the income on $20,000, directed that on the decease of any such nephew or niece leaving a child, children or issue surviving him or her, the said sum of $20,000 should be distributed to such issue per stirpes. A nephew and two nieces, after receiving income for a time, died without leaving issue. The court below awarded the principal in each case to the residuary legatee named in the will. The appellant, the personal representative of Bertha Carson Emley, one of the deceased nieces, contends in each of these appeals that the funds should have been awarded under the intestate laws to the next of kin of the original testator.

Robert N. Carson died in 1907, leaving a widow and collateral heirs to survive him, but no children. His last will and testament as probated consisted of an original testament and three codicils. After providing for the payment of debts, construction of a mausoleum, cash bequests to his wife and servants, and a devise of certain real estate to his wife for life, the will provided: *"Fifth:* All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, of which I may die seized, possessed or entitled to, I give, devise and bequeath unto my executors hereinafter named, whom I have also constituted Trustees hereof, and hereunder, to hold the same *In Trust,* for the following uses, intents and purposes, to wit". The income was to be first devoted to the payment of an annuity or annual sum of $100,000 to $125,000 to his

wife for life, it being directed "that this provision for
my said wife shall have precedence and priority over all
other provisions in this my last Will and Testament,
so that if for any reason, the income of my estate shall
not be sufficient to pay them all, this annuity or yearly
sum shall be first paid before any other payments hereby
directed to be made." The widow was also given a power
of appointment by will as to $500,000 of the principal
of the trust estate. On failure to exercise that power
then that sum was to "remain and be considered part of
my [his] residuary estate." An annuity of $6,000 per
year for life was then provided for each brother and
sister of testator.

This brings us to the provisions in the will—part of
the paragraphs defining the trust—which gave rise to
this controversy. The pertinent parts are as follows:
"To set apart as many sums of Twenty thousand dollars
as I shall leave nephews and nieces surviving me (such
nephews and nieces being the children of any of my
brothers or sister who shall have died in my lifetime)
and to pay the net income from each of said sums of
Twenty thousand dollars in quarterly payments in each
and every year from the time of my decease unto the
said nephews and nieces for and during all the term of
their natural lives respectively." A similar provision
in identical language provided for his nephews and
nieces, children of brothers or sister who survived the
testator. They, respectively, were not to receive income
until after the death of their parents. "Upon the decease
of any of my said nephews or nieces, leaving a child or
children or issue of a deceased child or children him,
her or them surviving, to pay unto such child or children,
or the issue of a deceased child or children of my said
nephews and nieces so dying, the said sum of Twenty
thousand dollars, of which my said nephews and nieces
so dying, had in their respective lifetimes received the
income, if one, solely, if more than one, to be divided
among them in equal parts, share and share alike, per

stirpes and not per capita." Bequests of less amounts on a similar plan were then made to testator's grand-nephews and grandnieces.

"As to the balance of the said net income of my said residuary estate, I direct my Trustees hereinafter named to hold and invest the same from time to time until and after the decease of my said wife, and I direct that any such accumulated income shall form part of the principal of my estate and shall be held with the principal for the uses, trusts and purposes, as hereinafter set forth in regard to The Carson College for Orphan Girls here-inafter mentioned."

The testator then declares a long cherished desire to found after the death of his wife a college for the education of orphan girls. To accomplish this purpose he directed: "I therefore direct the said Trustees of this my last Will and Testament, immediately after the decease of my said wife, to hold the said rest, residue and remainder of my estate (in which shall be included any income accumulated as above directed, and all the real and personal estate that I have heretofore given to my said wife, during the term of her natural life, saving and excepting, however, that portion which may be disposed of by her under the power of disposition by will, which I have hereinbefore conferred upon her), IN TRUST, for the following uses and purposes". From this secondary residue $1,000,000 was to be set aside to be used for the erection of buildings for the college and "after the payment of the remaining annuities herein-before directed to be paid, my said Trustees shall pay the balance of the said net income of my estate to the said corporation quarterly to and for the support and maintenance of the said college." Should there be any surplus income this was to be used for erecting and furnishing dormitories for sick children in various hospitals.

We are all of the opinion that by the plain language

of this testament, without the necessity of resorting to any technical rules of construction the testator expressed his intention that the final or secondary residuary estate should be held in trust for Carson College for Orphan Girls and that each of the three sums of approximately $20,000 finally became a part of such secondary residuary estate by reason of the failure of issue. "The intent as disclosed therein has always been held controlling in construing a will; courts will seek to find that intent within its four corners. Once determined, it will be effectuated unless in contravention of some established rule of law or public policy": *Mereto's Estate,* 311 Pa. 374, 377, 166 A. 893; *Webb v. Hitchins,* 105 Pa. 91, 95. "If the language employed by him in disposing of his estate is plain and clearly discloses his intention the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation": *Wood v. Schoen,* 216 Pa. 425, 428, 66 A. 79. "It is a rule of common sense as well as law not to attempt to construe that which needs no construction": *Reck's Appeal,* 78 Pa. 432, 435.

A construction which will avoid an intestacy is always preferred, if such result can be reached by any fair interpretation of the will. The intention of the residuary clause is to pass the whole estate and prevent any part of it from coming under the intestate laws. Even "when the language of a residuary clause is ambiguous, the courts lean toward a broad, rather than a narrow construction, in order to avoid intestacy": *Fullers' Est.,* 225 Pa. 626, 629, 74 A. 623.

Before discussing the various features of this will which confirm our construction we will state the contention of the appellant, as a further examination of the will will not only support the opinion of the court below, but at the same time answer the arguments of appellant. In brief, the theory of the appellant is that these different sums of $20,000 were "set apart", that is, carved out of

the trust estate, and ceased to be a part thereof and were absolutely removed therefrom, so that when the beneficiary who had been receiving a life income therefrom died, there occurred "a partial failure of the residue" (*Kerr v. Dougherty*, 79 N. Y. 327; *Davis v. Davis*, 62 Ohio 411, 57 N. E. 317; *Gray's Est.*, 147 Pa. 67, 23 A. 205), and since no specific provision was made to meet the eventuality of failure of issue, the testator died intestate as to those principal sums.

This argument will not stand examination for several reasons, but primarily because it contains two false premises, to wit, the assumption that the various sums of $20,000 with which we are dealing were carved out and severed from the residuary estate and that the will did not take care of the situation which arose by reason of the nephew and nieces dying without issue to survive them.

As the fact as to whether the testator provided what should be done with these principal sums in the situation that has arisen is an essential premise in the arguments of both appellant and appellee we will first consider that feature although the two false premises are interrelated.

It will be observed that we are in fact dealing with a residue of a residue. The testator, after providing for payment of his debts and funeral expenses, payment of a cash sum to his wife for immediate needs and a devise to her of real estate for life, and bequests to servants, gave all the rest, residue and remainder of his estate to his executors as trustees. That created the main or first residuary estate. Then after providing primarily for the payment of an annual sum to his wife from the primary residue in preference to all other provisions of his will and making provisions for his next of kin, he set up an elaborate plan for the disposition of the remaining income for the founding and maintenance of The Carson

College for Orphan Girls, giving the residue of the main or first residue for the use of that college.

We deem the provisions in the fifth and sixth paragraphs of the will creating a residue within a residue a plain declaration by the testator in language free from ambiguity that any part of the main residuary estate not theretofore disposed of should go to Carson College. In the three cases with which we are dealing the nephew and nieces received income for their respective lives but died without issue to survive them. Consequently, when the bequest of principal failed, these sums became a part of the second residuary estate and passed to the college.

An examination of the general scheme of the will, which discloses a writing made after much thought by the testator with the assistance of competent counsel, further confirms our conclusion. The testator's first thought was for his wife's comfort. He then dealt liberally and impartially with his collateral relatives indicating that he had definite ideas of the limits of his bequests to them. When they were provided for his fortune was to be devoted to a worth while cause, the education of orphan girls. There is a clearly exhibited intention to devote to that purpose all his resources not specifically bequeathed. We cannot find the slightest justification in the language of the will for holding that an intestacy arose. " 'The residue' of a man's estate, in testamentary language, means whatever is not specifically devised or bequeathed, and in whatever part of a will it may happen to be found it ought to have that meaning, unless the whole will taken together shows clearly that it was not so intended. A will bequeathing the residue of personalty passes everything not otherwise effectually disposed of": *Willard's Appeal,* 68 Pa. 327, 332. Also see *Wood's Estate,* 209 Pa. 16, 57 A. 1103; *Taylor's Estate,* 239 Pa. 153, 163, 86 A. 708.

But the appellant argues that these sums of $20,000

were absolutely removed and forever separated from the trust estate. We do not so read the will. The testator discloses by his testament an intention to give to his wife and closest relatives an annuity or fixed sum unaffected by fluctuations in income so far as that result was possible. As he reaches out farther he planned that those less closely related to him should not have an annuity but an income on a fixed principal, whatever that income should be, but not more than was earned by a definite part of his capital. We must, from a reading of the will, also assume that he had the assistance of competent counsel who appreciated the necessity for taking into consideration the accounting problems that would be presented. So when the testator spoke of setting apart sums of $20,000 for that purpose it amounted to no more than a convenient method of arriving at the amount to be paid each and rendering a business-like report as to each interest. This did not remove the funds from the primary residue but merely furnished the mechanics for accomplishing his purpose. As a matter of fact, the principal sums of $20,000 with which we are concerned never ceased to be a part of the primary residue any more than the $500,000 as to which his wife had the power of appointment until and when the conditions were complied with that would cause a vesting. We by no means agree that even if there had been a "carving out", partial intestacy would follow, but it is not necessary to consider that speculation further than we have later done in connection with the cases upon which appellant relies. Once it becomes apparent that these sums were not a part of the secondary residue until the nephew or niece died without issue, there is no room for inference that a partial intestacy existed. Although we do not believe it is required, further support for our conclusion will be found in the cases of *Knox's Est.*, 279 Pa. 120, 123 A. 670 and *Mereto's Est.*, supra.

The appellant relies largely upon the principles fol-

lowed in *Gray's Estate,* supra. A brief reference to that case will, we believe, demonstrate that it has no application to our present problem. Mr. Justice MITCHELL, who wrote the opinion in that case, severely criticized the principles followed, but adhered to the rule on the principle of stare decisis. The law was subsequently altered by the legislature: Act, June 7, 1917, P. L. 403, §15 [c] (20 PS 253). As the Carson will was probated long before the effective date of that statute the new law is not applicable, but it does indicate that we should not go one step beyond what the Gray case requires.

There testator bequeathed his residuary estate to five individuals and the Allegheny General Hospital. As the will was not attested by two witnesses thirty days before testator's death the bequest to the hospital was void. The five individuals claimed the entire residuary estate to the exclusion of testator's next of kin. The Supreme Court, following the English rule as adopted by previous decisions in this Commonwealth, awarded the share attempted to be given by the testator to the hospital to the next of kin. It will readily be seen that the case has no application to the present controversy.

The court below declined to award these principal sums to the next of kin because their use was bequeathed to Carson College by the provisions of the will which created a secondary residue, a residue within a residue. There was no failure, partial or otherwise, in the final residue either by reason of subsequent happenings, incapacity to take or attempted illegal devise or bequest. The provisions of the will for the benefit of nieces and nephews formed no part of the final residue and as a result the principle of *Gray's Estate* had no application. The flaw in appellant's logic is due to a failure to distinguish between the two residues. This confusion in reasoning further appears when appellant in one breath argues that the three sums of $20,000 were absolutely

removed from the primary or main residue and at the same time cites *Gray's Estate* on the theory that these bequests to the nephews and nieces were part of the residue. These sums passed to the secondary residue and there was, therefore, no intestacy.

Each decree in the above appeals is affirmed.