## McOwen Estate

*High, Swartz, Flynn & Roberts* and *Norris, Lex, Hart & Eldredge,* for accountants.

FORREST, J. (thirty-eighth judicial district), specially presiding, April 30, 1951.—Testatrix died on August 18, 1950. By her will testatrix provided, inter alia, as follows:

"SEVENTH: I give devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever the same may be, to the following persons and in the following amounts and proportions, that is to say:

"(a) I direct my Executors to apply a sum of money equal to one forty-fifth (1/45th) of my residuary estate to the purchase of a cash refund annuity which shall be payable to Margaret Cox Ritschy, the widow of my deceased brother, Donald P. Ritschy, for and during the term of her life, or until her remarriage, with provisions that any cash refund or reversionary interest shall be payable to the issue of Norman J. Greene, Frederick M. Greene and Elizabeth M. Barhite, in equal shares, per stirpes.

"(b) I direct my Executors to apply a sum of money equal to one-forty-fifth (1/45th) of my residuary estate to the purchase of a cash refund annuity which shall be payable to Mary Carr if she shall be in my employ at the time of my decease, for and during the term of her life, with provisions that any cash refund or reversionary interest shall be payable to the issue

of Norman J. Greene, Frederick M. Greene and Elizabeth M. Barhite, in equal shares, per stirpes.

"(c) To Regina E. Schweikart, my Secretary, three forty-fifths (3/45) of my residuary estate, absolutely.

"(d) To Marvin R. Briggs, my nephew, three forty-fifths (3/45) of my residuary estate, absolutely.

"(e) To Jessie R. Heberer, my sister, one-half of the remainder of my residuary estate, absolutely.

"(f) To The United States Trust Company, of the City of New York and Elizabeth Briggs Prickett, and, upon her death, resignation or inability to act, Todd C. Tiebout, of the City of New York, and, upon his death, resignation or inability to act, the then eldest child, and in succession, of said Elizabeth Briggs Prickett, one-half (½) of the remainder of my residuary estate. In Trust, to take, receive and hold the same, and to invest, reinvest and keep the same invested, and to collect and receive the income therefrom, and, after the payment out of the said income of all proper costs and charges, to pay and distribute the net income, and, as well, to pay, convey, transfer and assign the corpus thereof, to and among the following persons, in the amounts and at the times following, that is to say:

"(f-1) To pay the said net income at convenient periods in each year to my said niece, Elizabeth Briggs Prickett, for and during the term of her natural life."

The codicil provides:

"I, Louise R. McOwen, of Overbrook, in the County of Montgomery, Commonwealth of Pennsylvania, being of sound and disposing mind, memory and understanding, do hereby make, publish and declare this to be a codicil to my last will and testament dated the First day of June, 1949.

"FIRST: I hereby revoke subparagraph '(b)' of the seventh paragraph of my said will, by the terms of

which I direct the purchase of a certain annuity for the benefit of Mary Carr.

"SECOND: I hereby make the following provision which shall be designated as sub-paragraph (e) of the fifth paragraph of my said will, that is to say:

"I give and devise the sum of Twenty-five thousand Dollars ($25,000) to Mary Carr if she shall be in my employ at the time of my decease, absolutely."

The question is submitted for determination as to the proper manner of distribution of the income which the executors have collected during the administration of the estate and whether the whole of this income is payable in equal shares solely to those persons named in paragraphs (e) and (f), aforesaid, to the exclusion of the forty-fifths interests named in preceding paragraphs, or whether all interests share in such income in accordance with the fractional amounts of principal bequeathed to each.

At first blush it would appear that this question is controlled by section 753 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.101 et seq., which provides, inter alia:

"(d) Residuary legacy or devise. All income from real and personal estate earned during the period of administration and not payable to others shall be distributed pro rata among the income beneficiaries of any trust created out of the residuary estate and *the other persons entitled to the residuary estate*." (Italics supplied.)

What is meant by the "residuary estate" in the above? "The residue of an estate is that which is left after the gifts specified or designated have been paid or satisfied": Yeisley Estate, 358 Pa. 200, 202 (1948). " 'The residue' of a man's estate, in testamentary language, means whatever is not specifically devised or bequeathed, and in whatever part of a will it may happen to be found it ought to have that meaning, unless the whole will taken together shows clearly that it was

not so intended": Carson's Estate, 130 Pa. Superior Ct. 133, 140 (1938).

If there were but one "residuary estate" here, we would have no trouble in deciding that all of the beneficiaries in the residue estate are entitled to their proportionate part of the income, as for example, if all residuary legatees were to receive a certain definite number of forty-fifths. However, here we have two residuary estates, one of which may be called the tentative one out of which the forty-fifths were taken and the balance might be called the ultimate. Such a residuary estate has been referred to as primary, main, first or tentative residue as opposed to secondary or ultimate residue or a residue within a residue. In Carson's Estate, supra, the court said, at page 139:

"It will be observed that we are in fact dealing with a residue of a residue. The testator, after providing for payment of his debts and funeral expenses, payment of a cash sum to his wife for immediate needs and a devise to her of real estate for life, and bequests to servants, gave all the rest, residue and remainder of his estate to his executors as trustees. That created the main or first residuary estate. Then after providing primarily for the payment of an annual sum to his wife from the primary residue in preference to all other provisions of his will and making provisions for his next of kin, he set up an elaborate plan for the disposition of the remaining income for the founding and maintenance of The Carson College for Orphan Girls, giving the residue of the main or first residue for the use of that college.

"We deem the provisions in the fifth and sixth paragraphs of the will creating a residue within a residue a plain declaration by the testator in language free from ambiguity that any part of the main residuary estate not theretofore disposed of should go to Carson College. In the three cases with which we are dealing

the nephew and nieces received income for their respective lives but died without issue to survive them. Consequently, when the bequest of principal failed, these sums became a part of the second residuary estate and passed to the college." See also Fetter Estate, 152 Pa. Superior Ct. 10 (1943), and Mereto's Estate, 311 Pa. 374 (1933).

It thus becomes doubtful as to what is the true and actual residuary estate here. This question must be determined by finding what was the intention of the testatrix. ". . . the statutory rule should prevail unless a contrary intention appears by the will": Buckwalter's Estate, 30 D. & C. 93, 95 (1937).

What was the general scheme of testatrix, gathered from the four corners of the will? She has given the primary portion in forty-fifths shares totalling seven (as modified by the codicil), and the second portion she has given by halves (one of them in trust). By this method she has demonstrated an intention that the secondary residue only is to be regarded as having all the usual attributes of a residue, because the shares given by the primary residue are invariable in any event—including the event that has actually occurred, namely, the revocation of one forty-fifth share by the codicil.

The writer of this opinion believes that the only purpose of establishing a tentative residuary estate was to specify what proportion of the estate each of the beneficiaries of the one-forty-fifths and the three forty-fifths shares should receive. As a result of the division of the forty-fifths, there was left the secondary or ultimate or final residue which was the "catch-all" into which everything fell that was not otherwise specifically bequeathed or devised. In fixing these fractional parts or shares, it was the apparent intention of testatrix to fix, without any possibility of increase or decrease, proportion wise, the pro rata share which

these beneficiaries were to receive. They certainly were not the chief objects of testatrix's beneficence. These forty-fifths were similar to pecuniary legacies carved out of the residue. The two who shared the ultimate residue qualify for the designation of the chief objects of testatrix's beneficence, and, accordingly, it would seem that it was the intention of testatrix that they should receive what had not been previously specifically bequeathed, such as the fund here involved, to wit, the income during the administration of the estate.

Let us illustrate the point by supposing that one of the benficiaries of the one forty-fifth or three forty-fifths were to lapse or fail, it would not be divided amongst those taking this part of the residue but would go to the ultimate residue because that was the intention of testatrix, which is arrived at by reading the will as a whole within its four corners. On the other hand, let us suppose that the disposition of one of the two equal shares in the ultimate residue lapsed or failed. No part of it would be divided amongst those who were taking the forty-fifths in the primary or tentative residue, because that is not the intention as gathered from the four corners of the will. The court, in Carson's Estate, supra, said, at pages 137 and 138:

"We are all of the opinion that by the plain language of this testament, without the necessity of resorting to any technical rules of construction the testator expressed his intention that the final or secondary residuary estate should be held in trust for Carson College for Orphan Girls and that each of the three sums of approximately $20,000 finally became a part of such secondary residuary estate by reason of the failure of issue. 'The intent as disclosed therein has always been held controlling in construing a will; courts will seek to find that intent within its four corners. Once determined, it will be effectuated unless in contravention of

some established rule of law or public policy': Mereto's Estate, 311 Pa. 374, 377, 166 A. 893; Webb v. Hitchins, 105 Pa. 91, 95. 'If the language employed by him in disposing of his estate is plain and clearly discloses his intention the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation'. Wood v. Schoen, 216 Pa. 425, 428, 66 A. 79. 'It is a rule of common sense as well as law not to attempt to construe that which needs no construction': Reck's Appeal, 78 Pa. 432, 435."

One of the attributes of a true residue is that it gains from lapsed legacies or legacies that fail and shares the losses of legacies additionally given. According to this test, what is the actual "residuary estate"? There is no question but that by revoking the one forty-fifth bequest of Rose Carr, that the proportionate share of the two beneficiaries who took the ultimate residue increased and that when a bequest of $25,000 was given in lieu of the one forty-fifth share, the residuary estate, out of which the same two took their shares, was decreased by the sum of $25,000. As has been said before, the bequests of the forty-fifth shares were in the nature of pecuniary legacies and we are supported in our conclusion that they should not participate in any income accruing during administration, having reached that finding, by the Fiduciaries Act of 1949, P. L. 512, sec. 753, subsec. (a), 20 PS §320.753(a):

"A pecuniary legacy bequeathed in trust shall bear interest at the rate of three per centum per annum from the death of the decedent until the payment of the legacy, *and when not in trust shall bear interest at the rate of three per centum per annum from one year after the death of decedent until the payment of the legacy.*" (Italics supplied.) Thus, a pecuniary legacy receives no part of the income during administration.

60

Testatrix has made varied dispositions of the principal and the income of her residuary estate, so that it cannot be said that her will discloses but one general intent, as to the dispositions of the income, as in Band's Estate, 103 Pa. Superior Ct. 553 (1931), and Jackson's Estate, 318 Pa. 256 (1935).

I am of the opinion that under this will the only true and ultimate residuary estate is that which I have heretofore designated as the secondary residue; and that it necessarily follows that the persons who are entitled to the income of that residue are entitled in equal shares to the entire balance of income which has accrued since the death of the testatrix. One half of said balance is accordingly awarded to Jessie R. Heberer and one half to Elizabeth Briggs Prickett. . . .

And now, April 30, 1951, this adjudication is confirmed nisi.