## Paul Estate

Before Cox, Rahauser and Wolk, JJ.

*William E. Schoyer*, for accountant.

*David Tuthill*, guardian and trustee ad litem.

*Austin L. George*, for estate of the life beneficiary.

*Carl E. Glock, Jr.*, for Pittsburgh Association for Improvement of the Poor.

*Malcolm Hay*, for Church Pension Fund and Domestic and Foreign Missionary Societies of the Protestant Episcopal Church.

*John G. Kish*, for Red Cross.

WOLK, J., for the court en banc, January 28, 1957.— This case comes before the court en banc on exceptions that were filed to the supplemental decree of court entered June 26, 1956, by Jacob W. Paul, Jr., and Pittsburgh Association for Improvement of the Poor, which decree awarded $5,716.93 to the residuary legatees under paragraph eighteenth of the will, rather than to the remaindermen under paragraph ninth of the will.

Jacob W. Paul died testate July 21, 1920. In his will and codicil he created 10 trusts totaling $308,000. The trust under consideration was created by the ninth paragraph of the will, which reads as follows:

"NINTH. I give and bequeath to Fidelity Title and Trust Company the sum of Fifty Thousand ($50,000) Dollars, in trust to invest the same and pay the income therefrom to my son, Edwin V. D. Paul, as near as may be in equal quarter annual payments for and during the term of his natural life, without liability to assignment, attachment, charge or anticipation by him, and upon his death to distribute said trust fund as follows:

| | |
|---|---|
| "Pittsburgh Association for Improvement of the Poor | $10,000.00 |
| "Clergy Relief and Pension Fund of the Protestant Episcopal Church | 10,000.00 |
| "Protestant Home for Incurables | 5,000.00 |
| "Endowment Fund of the Protestant Episcopal Church | 5,000.00 |
| "Jacob W. Paul, Jr., son of Edwin V. D. Paul and Alice Paul | 20,000.00 |

"I have made large advancements to my son, Edwin V. D. Paul, during his lifetime and, therefore, have

given him a smaller share than my other children in the distribution of my estate."

Edwin V. D. Paul, the life tenant, died November 27, 1955, a resident of Tacoma, Washington.

By decree of April 25, 1947, following the audit of the second and partial account of the Fidelity Title and Trust Company, trustee, certain United States bonds, and interest in an installment mortgage fund and an interest in real estate, in the net amount of $50,000, were awarded back to the trustee for the purposes specified in the will. The items so decreed were subsequently coverted into cash and invested in 5,038 units of Common Trust Fund No. 2 of the Fidelity Trust Company, Pittsburgh, formerly known as Fidelity Title and Trust Company. The said Common Trust Fund No. 2, as authorized by the Fiduciaries Investment Act, consists of common stock issued by a large number of corporations; interests in such fund, called "units" are purchased by the trustee for various estates in which it is acting as fiduciary, thus giving such estates the benefits of diversity of investment not otherwise so readily available. From time to time, as cash is required in a particular estate, the units in the said fund held by such estate are liquidated by determining the value of the entire fund as of the date of liquidation nearest the periodic reviewing date of such fund, and then determining the proportionate value of the units in the fund held by the estate then being liquidated. Cash in the amount of such pro rata liquidation value is then paid from the fund to such estate. In the present case the third and final account of the trustee shows that on January 4, 1956, after the death of the life tenant, 5,038 units in the said fund were liquidated in the amount of $61,060.56, an increase of $10,944.20 over the amount originally paid for these units.

The said third and final account further shows profits on the sale of United States Treasury bonds in

the aggregate amount of $430.93, which, when added to the increase arising from the liquidation of the investment of this estate in said Common Trust Fund No. 2 and the principal amount of $50,000 awarded to the trustee per decree of April 25, 1947, gives a total amount of $61,375.25. The latter amount is shown in the trustee's third and final account as the total "Principal—Personalty" received by the trustee.

The account shows disbursements of $5,374.28 out of principal, leaving $56,000.97 in the principal account for distribution.

The account further shows net income since the date of death of the life tenant in the amount of $215.96 which, when added to the said $56,000.97, leaves a total of $56,216.93 for distribution.

All parties in interest are agreed that the remaindermen under paragraph ninth of the will of Jacob W. Paul, deceased, are entitled to $50,000 of the said amount, but the balance of said amount, i.e., $6,216.93, is claimed by the executor of the life tenant, by the remaindermen under paragraph ninth of said will, by the residuary legatees under paragraph eighteenth of the will and by the trustee and guardian ad litem on behalf of the heirs of Jacob Paul.

There is no question but that the income of $215.96 included in said $6,216.93, being earnings on the fund since the date of death of the life tenant, should follow the distribution of the $6,000.97, the fund from which said earnings were derived.

No exceptions were filed to the item of $500 allowed as a fee to the trustee and guardian ad litem, thus leaving a balance of $5,716.93, the distribution of which is before the court for determination.

The auditing judge has adequately disposed of the claim of the executor of the life tenant and with which disposition this writer is in accord.

The auditing judge disposed of the claim of the trustee and guardian ad litem who represented persons in posse and such beneficiaries whose whereabouts are unknown and for unknown next-of-kin having a present interest in the estate of Jacob W. Paul by decreeing distribution under paragraph eighteenth, which reads as follows:

"EIGHTEENTH. Of the residue of my estate, real, personal and mixed, sufficient money shall be retained by the trustee hereinbefore named to pay the annuities hereinbefore provided for, the balance shall be divided into ten (10) equal parts and distributed as follows:

"One-tenth (1/10) to the Salvation Army.

"One-tenth (1/10) to the American Red Cross.

"Two-tenths (2/10) to the Central Branch of the Y.M.C.A. of Pittsburgh.

"Two-tenths (2/10) to the Clergy Relief and Pension Fund of the Protestant Episcopal Church.

"Three-tenths (3/10) to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church.

"One-tenth · (1/10) to the Central Branch of the Y.W.C.A. of Pittsburgh."

The auditing judge was correct in concluding that there was no intestacy as to the said amount of $5,716.93, but the writer disagrees with the conclusion that distribution should be made under paragraph eighteenth of the will, and contends that distribution should be made under paragraph ninth of the will.

The only exceptions filed were by Jacob W. Paul and Pittsburgh Association for the Improvement of the Poor, who claim distribution under paragraph ninth of the will. The question before the court involves the interpretation of paragraph ninth of the will.

Paragraph ninth of the will contains all the provisions governing the trust involved in this case. It gives $50,000 to the trustee *to invest* the same and to pay

the income to testator's son for life, and upon his death it provides the trustee shall "distribute said *trust fund*" to five named remaindermen. If specific amounts totaling $50,000 were not mentioned, there would be no doubt that the remaindermen would be entitled to the entire fund including the appreciation thereon.

Paragraph ninth as a trust is complete in itself. The trust when created in the will was $50,000. When testator allocated this *trust fund* among five remaindermen in specific sums, these sums were descriptive only and merely fixed the proportions which the remaindermen should receive based on the trust of $50,000 set up in his will. The trustee was bequeathed the said sum of $50,000 *to invest* the same. There might be as a result of investments a gain or there might be a loss. The ninth paragraph did not distribute the sum of $50,000 set up as a trust among the remaindermen, but specifies that the trustee "*distribute said trust fund as follows*", naming the remaindermen.

While paragraph ninth seems to be a separate entity complete in itself, added strength to this conclusion can be obtained from an examination of the entire will. Many trusts are established in the will of testator. In none of the paragraphs establishing these trusts, as regards distribution after the life estates, are the words "*distribute said trust fund as follows*" used except in paragraph ninth.

In paragraph third the language used is "the sum of Twenty Thousand ($20,000) Dollars shall be distributed as follows".

In paragraph fourth the language used is "the principal sum of Eighteen Thousand ($18,000) Dollars shall be paid to".

In paragraphs fifth and sixth the language used is "the principal sum shall be distributed as follows".

In paragraphs eleventh (revoked in codicial), twelfth and thirteenth after a power of appointment the lan-

guage used is "in the event of her failure so to do the principal shall be divided among her heirs under the intestate laws of the State of Pennsylvania."

In paragraph sixteenth (revoked in codicil) the language used is "to pay the principal sum to his children, Pleasance Baker and C. H. Baker, Jr."

In paragraph first of the codicil the language used is "to pay the principal sum to her five daughters as follows". .

In paragraph second of the codicil the language used to "to pay the same to such person or persons as she may by her last Will and Testament appoint".

In paragraph fourth of the codicil the language used is "the principal sum upon his death to become a part of my residuary estate".

In the various trusts established by testator, aside from the one in paragraph ninth, it might be argued logically and with success that those who take after the life estates would be entitled to any appreciation that might accrue. It is not necessary to pursue this argument for the trust in paragraph ninth is a much stronger case than any of the others.

The case at bar is governed by Estate of John Boyer, 174 Pa. 16 (1896), in which the will and codicil bequeathed $5,000 in trust with the income payable to Mary Axe for life:

" '. . . And the Five Thousand Dollars of which Mary Axe receives the interest etc. during her natural life, I give and bequeath after her decease to "The Hospital of the Protestant Episcopal Church in Philadelphia," to be paid to the said Hospital one year after her decease without interest, . . .' "

At the death of the life tenant the trust exceeded $5,000 and the auditor awarded the excess to the residuary legatees. The court sustained the exceptions to the award holding:

"Notwithstanding the able report of the auditor we are of opinion that he has reached an erroneous conclusion as to the disposition of the fund in dispute. In plain language the proposition may be thus stated. The testator bequeathed $5,000 to a trustee. The interest to be paid to A after her death the principal to B. The fund passed into the hands of the trustee and from that time it was no longer part of the testator's estate. But two persons were then interested in it, the tenant for life and the remainderman, and to them alone was the trustee answerable. He held the fund for their use alone. Its increase or decrease affected no one else. The remainderman could have purchased the life estate and thus become absolute owner of the fund, and surely if this had been done no one after the death of A could have claimed an interest in the accretions. The fallacy of the argument consists in treating the bequest as of the interest to Mary Axe of $5,000 only and to the hospital of only that amount. *It was a 'fund' that the testator referred to when speaking of 'the five thousand dollars' and not of that particular sum.* After it had once been separated from the principal of the estate it vested in the two beneficiaries who might suffer if it decreased or be benefited by its increase.

"No one questions the right of A to receive the income of the original amount and its accretions, and for the same reason *the remainderman is entitled to the whole fund after the death* of A. This of course is based upon the conclusion that there was no intestacy as to any part of the fund, upon which finding we agree with the auditor." (Italics supplied.)

The Supreme Court affirmed on this opinion.

Paragraph ninth of the Paul will provides that the trustee shall "distribute said trust fund". The Boyer will provided that "the Five Thousand Dollars" be paid to the hospital. Therefore, paragraph ninth of the Paul

will gives the remaindermen the "fund" rather than a "particular sum" even more clearly than did the Boyer will.

More recently in Sentner's Estate, 344 Pa. 118 (1942), the court applied the same principle where the fund decreased rather than increased. The will left $5,000 in trust to be paid to A for life,

". . . and upon her decease I give and bequeath the said sum of Five Thousand Dollars unto my nephew, John Sentner. . . ."

The court held page 120:

" '. . . It is quite true that upon the death of the life tenant there was a bequest of "the said sum of $5,000". But this language cannot be read alone. It must be considered in connection with all of the trust provisions. Clearly what is meant is *a gift of said fund*, invested as directed by the will. . . .' " (Italics supplied.)

Again paragraph ninth of the Paul will is clearer than the Sentner will. Paragraph ninth of the Paul will gives the remaindermen the "fund", whereas the Sentner will bequeathed them "the said sum of Five Thousand Dollars".

Concerning Judge Ryan's opinion as regards paragraph fifth of the will involved in this case to which reference is made by the auditing judge, paragraph fifth provides that after death of the life tenant, *"the principal sum"* shall be distributed in specific amounts, whereas paragraph ninth provides that the *"trust fund"* shall be distributed, and therefore presents a stronger case for the remaindermen. As stated heretofore, it might be argued logically and with success that even under paragraph fifth, the remaindermen would be entitled to the appreciation that accrued. It is significant that the record does not disclose that the remaindermen under paragraph fifth made any claim

to the increase of the fund, and it does not appear that Judge Ryan had the benefit of argument or citations supporting their position.

Of all the trusts in the will, paragraph ninth is the only one that makes distribution of a *"trust fund"*. An examination of the entire will and codicil of Jacob W. Paul clearly indicates that under paragraph ninth the remaindermen are entitled to the increase in the trust fund.

The exceptions filed on behalf of Jacob W. Paul, Jr. and Pittsburgh Association for the Improvement of the Poor are sustained, and a decree will be drawn in accordance with this opinion.

Rahauser, J., dissents on the basis of his original opinion filed.

### Dissenting Opinion

RAHAUSER, J.—. . . The executor of the will of the life tenant, Edwin V. D. Paul, claims that the $6,216.93 should be distributed to him on the theory that increments accruing by reason of gains arising from the liquidation of investments should be awarded to the life beneficiary. He claims that the said amount represents income to which the life tenant is entitled. In support of this contention counsel cites Nirdlinger's Estate, 290 Pa. 457, at page 470, where the court said:

"The testator gave the income of his estate to the life tenants. 'Income' may be defined as a gain which proceeds from labor, business or property of any kind, the profits of commerce or business. It includes the return earned by capital stock. It has a broader meaning than the term 'dividend'; it includes profits. We said in Quay's Est., 253 Pa. 80, that profits included not only the accumulations of earnings, but the advances or increment in value. It is not necessary to include the latter in the definition. What the testator did was to give to the life tenant all this income."

Counsel for the estate of the life tenant further contends that the precedent has already been established for decreeing the said increment to the life tenant for the reason that at the second and partial account by the decree of April 25, 1947, the increment of $12,013.85 was awarded to the life tenant.

The decree of April 25, 1947, was a distribution of the particular funds then before the court, the remainder interests made no claim to the funds distributed to the life tenant, and in no way was this decree a final determination of the rights of the parties. See Edwards Estate, 360 Pa. 504 at 509.

The life tenant is not entitled to share in this fund. The account clearly shows that the liquidation of the interest in the trust fund accrued after the death of the life tenant. There is no question but that the sale of the trust units occurred in the ordinary management of the fund. There was no abuse of the discretionary power of the trustee in the liquidation of the trust units. The life tenant's interest in this trust terminated on his death. Any increase in value of the trust res and any income accruing after that time could not inure to the benefit of the life tenant. See Neafie's Estate, 325 Pa. 561 at 571.

In addition, there is a presumption that the proceeds from the sale of the units of Common Trust Fund No. 2 as well as the profits on the sale of U. S. Treasury bonds belong to the trust res and are a part of the profits of the trust. The burden of proving otherwise is on the person asserting the claim. See Lewis Estate, 351 Pa. 576, and Nirdlinger's Estate, 290 Pa. 457 at 475. No such proof was offered here.

The remainder interests under paragraph ninth of the will contend that the said $6,216.93 is principal; that the principal of the trust fund was vested in the said remainder interests and that the said amount should be prorated among them.

The auditing judge does not believe that the remainder interests under paragraph ninth of the will share in this fund. We agree with the late Judge Ryan who, in considering a similar question under another trust created by paragraph fifth of the will of Jacob W. Paul, No. 1659 of 1941, said:

"The question presents itself as to whether the designated charities may be entitled to the enhancement of corpus. A reading of the will convinces that testator intended each to receive only the precise sum of $2,-500.00. Apparently he did not envision an increase of principal. Nothing on the face of his will permits us to supply that oversight. Butler Estate, 364 Pa. 279."

Similarly, in the ninth paragraph of his will, Jacob Paul gave the remainder interests certain precise sums. Nothing in that paragraph permits us to decree a larger amount. See Johnson Trust, 3 Fiduc. Rep. 209.

An effort was made by counsel for the estate to discover the whereabouts of all the heirs of Jacob Paul, deceased. His efforts were not successful. In view of these facts the court appointed a trustee and guardian ad litem to represent the heirs not discovered and those not on the record or present at the audit.

The court agrees with the contention of the guardian ad litem that this is a fund similar to that referred to in Scott on Trusts, §430, which reads as follows:

". . . In this topic we are concerned with the similar problem which arises where property is transferred upon a trust which does not fail but which on the contrary is fully performed without exhausting the trust estate. In such a case there is a resulting trust of so much of the property as is not required for the accomplishment of the purposes of the trust, unless the settlor manifested a different intention. . . . If the property is devised or bequeathed, there is a resulting trust of the surplus in favor of the testator's estate . . . and where personal property is bequeathed, the resulting

trust is in favor of the next of kin or residuary legatee.
. . ."

However, the court is of the opinion that this fund falls within and is governed by the eighteenth paragraph of the will which reads as follows:

"EIGHTEENTH. Of the residue of my estate, real, personal and mixed, sufficient money shall be retained by the trustee hereinbefore named to pay the annuities hereinbefore provided for, the balance shall be divided into ten (10) equal parts and distributed as follows:

"One-tenth (1/10) to the Salvation Army.

"One-tenth (1/10) to the American Red Cross.

"Two-tenths (2/10) to the Central Branch of the Y.M.C.A. of Pittsburgh.

"Two-tenths (2/10) to the Clergy Relief and Pension Fund of the Protestant Episcopal Church.

"Three-tenths (3/10) to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church.

"One-tenth (1/10) to the Central Branch of the Y.W.C.A. of Pittsburgh."

Here Jacob Paul, in speaking of his estate, real, personal and mixed, directs the balance of his estate to be divided into 10 equal parts. In Bricker's Estate, 335 Pa. 300, at 303, the Supreme Court said:

". . . 'Balance' is the vernacular for the legal phrase 'rest, residue and remainder': see Thompson's Estate, 237 Pa. 165, 169; Taylor's Estate, 239 Pa. 153, 163. The word 'balance' in the fifth paragraph of this will must be interpreted as meaning 'balance *of the estate,*' there being no reason why it should be restricted to the balance of the fund derived from the items mentioned in the third paragraph: see In re Hayes' Will, 263 N. Y. 219, 188 N. E. 716. Whatever ambiguity exists must be resolved in accordance with the principle that a broad rather than a narrow construction of a residuary clause is favored in order to avoid intestacy, it

being presumed that a testator intends to dispose of his whole estate: Fuller's Estate, 225 Pa. 626, 629; Carson's Estate, 130 Pa. Superior Ct. 133, 138."

The auditing judge is of the opinion that the fund in dispute falls into the residue of the estate and is distributable under paragraph eighteenth of the will. See Zoller Estate, 373 Pa. 451.