**Suter Estate**

*Thomas S. Howland*, for accountant.

KLEIN, Adm. J., July 29, 1969.—Leonhard Suter, also known as Leonard Suter, died March 20, 1951, leaving a will dated December 1, 1925, using a printed form upon which he made handwritten insertions. Letters testamentary were issued to Charles Dehler, executor, who filed his first and final account, which was audited by Lefever, J., on January 7, 1952. Letters of administration d.b.n.c.t.a. were issued to Agnes Suter on July 26, 1968.

Like most cases in which homemade wills are left, this. case has presented complex problems of construction out of all proportion to the size of this modest estate.

In item 2 of the will, testator provided:

"I give devise and bequeath to my Sister, Philomina Dehler the use of my house 4619 Edgemont Street Bridesburg during her natural life after her decease the Same be Sold for the benefit of my heirs."

Items 3, 4, 5, 6, and 7 gave pecuniary legacies to designated charities. These were followed by a clause, all of which was printed, except the last eight words which we have italicized:

"And as to all the rest, residue and remainder of my Estate, real, personal or mixed, of whatever nature or kind, or wheresoever situate at the time of my decease, I do hereby give, devise and bequeath *near relatives Brothers and Sisters in equal Shares.*"

At the audit of the executor's account, the question was submitted as to whether the gift of the residue to "near relatives Brothers and Sisters in equal Shares" included the surviving children of a sister who died prior to the date of the execution of the will. In his adjudication dated March 6, 1952, Judge Lefever,

the auditing judge, ruled that testator had manifested his intention to make a gift to a class, limited to living brothers and sisters.

Philomina Dehler, testator's sister who was given the use of his home, 4619 Edgemont Street, for her life, died April 3, 1968, whereupon the house was sold for $5,000. The present accounting is of the proceeds of the sale.

The accountant, in her statement of proposed distribution, suggests that distribution be made pursuant to the provisions of section 14 of the Wills Act of April 24, 1947, P. L. 89, in equal one-ninth shares to the issue of testator's deceased brothers and sisters living at the date of the death of Philomina Dehler. Loretta H. Breen, one of testator's nieces, objects to the suggested distribution and contends that the distribution is controlled by Judge Lefever's ruling and that the fund should be divided stirpitally between the issue of Albert Suter and John Suter, testator's two brothers who survived him. Under this interpretation, she would receive one-half of the fund instead of one-ninth.

The residue of an estate embraces everything that is left after all other gifts which have been otherwise effectually given, have been paid or satisfied: Wood's Estate, 209 Pa. 16 (1904); Carson's Estate, 130 Pa. Superior Ct. 133 (1938). It is clear in the present case that testator did not intend his home to be included as part of his residuary estate. He specifically provided that his sister, Philomina, was to have the right to use the property for life and after her death it was to be sold for the benefit of his heirs. Judge Lefever, in his adjudication, was careful to point out that the question of the proceeds of the real estate was not before him for disposition.

For many years uncertainty and confusion existed as to the date when heirs or next of kin should be as-

certained when a gift was made to them following a gift for life or a term of years. To correct this situation, the legislature enacted the Act of June 29, 1923, P. L. 914, which was made applicable to the wills of all persons dying on or after December 31, 1923, the effective date of the act. Section 1 of the act provides:

". . . That hereafter when, in and by the provisions of any deed or will or other instrument in writing, property, either real or personal, or both, shall be donated, granted, devised, or bequeathed, either directly or in trust, for the use and benefit of any person, charity, or other use, for years or for life or upon condition, and which shall provide therein that, upon the termination of the estate for years or for life or upon breach of condition or other cause, the remainder over shall vest in the donor's or testator's heirs or next of kin or the persons thereunto entitled under the intestate laws, or other similar or equivalent phrase, the same shall be construed as meaning the person or persons thereunto entitled at the time of the termination of the estate for years or for life or upon condition under the intestate laws of the Commonwealth as they shall exist at the time of such termination; and such phrases shall not be construed as meaning the person or persons who were the heirs or next of kin of the donor at the time the grant or donation was made or at the time the testator died: Provided, however, That nothing herein contained shall be construed to prevent any donor or testator from expressly or by necessary implication directing otherwise: And provided further, That the provisions of this act shall not apply to any case now pending."

The Act of June 29, 1923 was repealed by section 20 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.20, but essentially the same provisions were included in section 14(1) of the Estates Act of April 24, 1947, 20 PS §301.14 (1), as to convey-

ances, and in section 14(4) of the Wills Act of 1947, 20 PS §180.14 (4), as to wills. The latter section reads as follows:

"(4) Meaning of 'heirs' and 'next of kin' etc.— Time of ascertaining class. A devise or bequest of real or personal estate, whether directly or in trust, to the testator's or another designated person's 'heirs', or 'next of kin', 'relatives', or 'family' or to 'the persons thereunto entitled under the intestate laws', or to persons described by words of similar import, *shall mean those persons*, including the spouse, *who would take under the intestate laws if the testator* or other designated person *were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the estate so devised or bequeathed:* Provided, however, That the share of a spouse, other than the spouse of the testator, shall not include the ten thousand dollar allowance under the intestate laws. The time when such class is to be ascertained shall be the time when the devise or bequest is to take effect in enjoyment." (Italics supplied.)

The auditing judge, therefore, rules that the fund is to be distributed to the next of kin of Leonhard Suter, testator, who would be entitled to his estate under the intestate laws as if he had died intestate on April 3, 1968. As of that date, testator had no surviving spouse, issue, parents or grandparents. Accordingly, the estate descends "to the issue of each of the decedent's parents": Intestate Act of April 24, 1947, P. L. 80, sec. 3(3), 20 PS §1.3 (3).

Testator was survived by Sister M. St. Agatha Suter, Agnes Suter and Philomena McLane, children of Albert Suter, a brother of testator who died April 1, 1953, which was subsequent to testator's death; Loretta H. Breen, daughter of John Suter, a brother who died July 1, 1957, which was also after the date when testator died; Anna Geiges, daughter of Emil

Kuenzer, deceased son of Adelaide Kuenzer, a sister of testator, who predeceased him; Adeline Keogh, daughter of Louise Metzer, deceased daughter of the said Adelaide Kuenzer; and Tillie Murphy, Frank Kuenzer, Adelaide Hagele, children of Adelaide Kuenzer.

Since the next of kin are not all of the same degree, there being nieces and a nephew and grandnieces surviving, the latter being children of a deceased niece and nephew, the distribution is controlled by section 4 of the Intestate Act of April 24, 1947, supra, 20 PS §1.4, which provides:

"Section 4. Rules of descent — The provisions of this act shall be applied to both real and personal estate in accordance with the following rules:

"(1) Taking in different degrees. The shares descending under this act to the issue of the decedent, to the issue of his parents or grandparents or to his uncles or aunts or to their children or grandchildren, shall descend to them as follows: The part of the estate descending to any such persons shall be divided into as many equal shares as there shall be persons in the nearest degree of consanguinity to the decedent living and taking shares therein and persons in that degree who have died before the decedent and have left issue to survive him who take shares therein. One equal share shall descend to each such living person in the nearest degree and one equal share shall descend by representation to the issue of each such deceased person. . ."

Accordingly, the issue of a deceased niece and nephew would take collectively the one-ninth share which their parent would have received had he survived the life tenant. Since Louise Metzer, the deceased niece, and Emil Kuenzer, the deceased nephew, each left only one child, they are each entitled to

a one-ninth share, the same as the parent would have taken if living.

Subsequent to the death of the life tenant, another niece, Adelaide Hagele, died intestate on September 29, 1968, leaving to survive her two children, Dolores Zeoli and Louis Hagele, both of whom are sui juris. According to the statement of proposed distribution, an administrator of the estate of Adelaide Hagele has not been appointed and her one-ninth interest will, therefore, be awarded to her surviving children in equal shares. . .

And now, July 29, 1969, the account is confirmed nisi.